The Chancellor.
The bill is filed to foreclose two mortgages, held by the complainants against the property of the Rockaway Manufacturing Company.
The first mortgage, for $20,000, bears date on the thirteenth of November, 1854, and was recorded on the fifth of January, 1855. It was given by Freeman Wood and wife, the then owners of the premises, and constituted an encumbrance thereon when title was acquired by the Rockaway Manufacturing Company.
The second mortgage bears date on the twenty-second of February, 1856, and was recorded on the fifth of May ensuing. It was executed by the Rockaway Manufacturing Company to the complainants to secure the payment of all notes, checks, or drafts of the mortgagors then held, or that might thereafter come to the hands of the mortgagees, and of all moneys then loaned, or that might thereafter be loaned by the mortgagees to the mortgagors. Upon this second mortgage, the complainants claim an indebtedness exceeding $25,000.
The Rockaway Manufacturing Company were declared insolvent on the thirtieth of May, 1856, before the filing of the bill of complaint, and their property passed into the hands of receivers. No answer is filed on their behalf. There is no dispute touching the execution or the. validity of the mortgages. The only questions raised upon the argu *191 ment relate to the validity of certain liens, and the order of priority between the encumbrance of the liens and of the mortgage debts.
The first mortgage of the complainants, for $20,000, which was a subsisting encumbrance upon the premises when the Rockaway Manufacturing Company acquired title, is a prior encumbrance to the liens of the mechanics and materialmen, both upon the land and upon the buildings which were then upon it. So far as this mortgage is concerned there seems to be no controversy.
The new buildings upon which the liens are claimed were commenced in the summer of 1855. The materials, which constitute the claim of Decasse, were furnished from the first of August, 1855, to the first of April, 1856. Those constituting the claim of Sayro wore furnished from July 31st, 1855, to May 9th, 1856. The complainants’ second mortgage was not recorded till the fifth of May, 1856. The buildings were commenced, and the materials composing both lien claims (excepting two small items of Sayre’s claim) were furnished before the mortgage was recorded. It is clear, therefore, that the liens, if valid, have priority over the complainants’ second mortgage.
It is objected to the claim of Decasse, and the fact is established by the evidence, that a part of the materials furnished by him were not used in the construction of any building or fixture for manufacturing purposes upon the mortgaged premises, but continued unused at the time of the insolvency of the mortgagors. The evidence shows that all the materials were furnished to order for the construction of the converting furnace, and were delivered upon the premises of the company. The bulk of them were used in the converting furnace, a part of them at the rolling-mill, but a portion of them were left unused, the company having failed before the completion of the work.
The materials, having been furnished for the building, and delivered to the company or to their agents in good faith, it is immaterial to the validity of the lien whether they were *192 used in the building or not. The terms of the statute are very clear. It declares that the building shall be liable for the payment of any debt contracted and owing to any person for materials furnished for the erection and construction thereof, which debt shall be a lien on the building and on the land whereon it stands, including the lot or curtilage whereon the same is erected. The right to the lien depends upon the fact that the debt was incurred and the materials furnished for the purpose of the building. In the absence of fraud on the part of the creditor, the rights of the lien holder are not affected by a failure to use the materials, or by their diversion from the purpose for which they were intended. The law upon this subject is well settled. Wallace v. Melchior, 2 Browne 104; case of the Olympic Theatre, 2 Browne 275; Hinchman v. Graham, 2 Serg. & R. 170; Harker v. Conrad, 12 Serg. & R. 303; Church v. Allison, 10 Barr. 416; Witman v. Walker, 9 Watts & S. 186.
It has been so held repeatedly upon the circuits in this state.
To the claim of W. R. and M. Sayre, it is objected that the materials furnished by them were not used in the construction of any building or fixtures for manufacturing purposes, but were furnished for and used in the daily and weekly repairs of the furnaces in the rolling-mill, as they became burned — repairs from time to time to keep them in working order.
As the law originally stood, no lien was created by a debt contracted for repairs or alterations. Mix. Dig. 525, § 5.
But the act of March 9th, 1855, (Nix. Dig. 528, § 18,) which was passed before the debt to Sayre was contracted, extends the lien to all mills and manufactories for debts contracted for work done or materials furnished for the repairing of .any fixed machinery or gearing or other fixture for manufacturing purposes. The fact, therefore, that a part of the materials were furnished and used for repairs constitutes no objection to the validity of the lien.
It is further objected that the answer of these defendants *193 does not allege, nor does the evidence show, that the materials were furnished for the erection of any designated building, or for the construction or erection of any building whatever, or upon the faith of any lien to he created thereby. The answer alleges the sale and delivery of the materials by the defendants to the Rockaway Manufacturing Company at the times and for the prices specified in the schedule, and that they were used in the erection and construction of the buildings in the lien claim specified. The evidence appears fully to sustain the allegations of the answer, that the materials were furnished as charged in the schedule, and that a large proportion of them were used in the erection and construction of the buildings specified in the lien claim filed, the residue being txsed, as alleged in the complainants’ bill, in the repairs of the furnaces.
A more serious and embarrassing question is presented by an objection taken to the legality of the claim as filed, as well as to the averments of the answer and the evidence. The debt is claimed to be a lien upon four buildings and lands described in the claim, viz. (1) a frame building, 195 feet long by 73 feet 6 inches, and 116 feet in width on the parallel sides, with an addition thereto, 93 feet long by 90 feet, and 52 feet in width on the parallel sides, built for and used as an iron rolling-mill and forge; (2) a frame building, used as a steel forge and melting furnace, 65 feet by 60; (3) a frame office, 30 feet by 12; (4) a frame building, known as the steel furnace, and used as a converting furnace, 75 feet by 44, with an addition thereto, 38 feet by 41, which buildings are erected upon two lots, one known as tho rolling-mill lot, containing eight and a half acres, the second lot containing one acre, more or less. The lien claimed is upon the four buildings and upon all the lands described in the claim. It does not specify what part of the lien is upon each of the buildings, nor even what portion is claimed upon each of the lots.
It appears, by tho evidence, that the two lots are not contiguous to each other, but are separate and distinct lots, *194 from one-eighth to one-fourth of a mile distant, being separated - by an intervening lot of a third party. Upon the rolling-mill. lot, .besides the' rolling-mill', the- steel forge, and melting furnace, and the office upon which the lien, is claimed, there are. a blacksmith shop, coal-house, and .oil-house, all prqltably of small value, and mere appendages or appurtenances of the main building. Upon the smaller lot, besides the steel furnace, there is a dwelling house and a básin and dock connected with the Morris canal.
Whether, under our statute, a lien claim can be filed to include several buildings, or buildings standing upon distinct lots of- ground, without specifying what portion of the debt is claimed as a lien upon each building, is a question of grave importance, and one not free from difficulty. It may to some extent depend upon the character and situation of the buildings,' the manner in which they are used, and whether they can be regarded as appendages or appurtenances of each other or as parts of one entire property. The evidence now before the court does not furnish full information upon these points. Unless counsel prefer an immediate decision upon the, case as it now stands, it will be referred to a master to ascertain and report more definitely the situation of the different buildings, the manner of using the same, whether as separate factories or as one entire establishment; and also the, proportion of labor and materials furnished by the several lien claimants for the respective buildings. And to avoid unnecessary delay, it will be further ordered that an immediate sale of the premises be made; that out of the proceeds of ¡the. sale, a sufficient sum be brought into court to cover the amount of the disputed claims, and that the balance be applied to the satisfaction of claims that are undisputed.
All further equity will be reserved till the coming in of the master’s report.