MARTIN BECKHARD

*v.*

JAMES RUDOLPH et al.

[Submitted March 27th, 1905.    Decided November 20th, 1905.]

1. Under section 3 of the Mechanics' Lien law (*P. L. 1898 p. 538*), the remedy by stop notice is open to a party who, under employment by or contract with the contractor, has installed fixtures and other materials in the building, and his claim may include the work of installation as a part of the cost of the materials *in situ.*

2. A stop notice which declares that certain materials were furnished to the contractor "for and in the erection" of a building, sufficiently shows that the materials were actually used in the building.

3. A stop notice which sets forth that a certain sum of money is due from the contractor to the claimant for materials used in the erection of a building, and that the contractor has refused to pay the money so due, need not more explicitly state that payment has been demanded of the contractor. The term "refusal" naturally imports a previous demand or request for payment.

---

Appeal of Robert C. Adamson & Son. On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported *ante p. 315.*

*Mr. John W. Slocum,* for the appellant, Robert C. Adamson & Son.

*Mr. Thomas P. McKenna,* for the respondents Chandler & Maps and Otto H. Wickliffe.

The opinion of the court was delivered by

PITNEY, J.

This was an interpleader suit. The complainant, Beckhard, is the owner of a building upon which certain repairs and alterations were done pursuant to written contract made between him and the defendant Rudolph. This contract having been duly filed in such manner as to cut off all other parties than the contractor from having a mechanics' lien (*P. L. 1898 p. 538* §§ *1, 2*), and there being a balance of moneys owing by Beckhard to Rudolph at the completion of the work, the defendants Adamson & Son, Chandler & Maps, Poole and Wickliffe, successively served stop notices upon Beckhard, pursuant to section 3 of the Mechanics' Lien law. Upon the hearing of the interpleader suit instituted by Beckhard against Rudolph and the several claimants under stop notices, a decree was made discharging the complainant upon his paying into court the sum of $824, which was the balance owing by him, and directing that the defendants interplead and file statements of their respective claims pursuant to chancery rule 221. Rudolph filed no statement and did not dispute the right of the claimants to the fund. The controversy as between the several claimants raised questions whether their claims were of such a character as to entitle them to detain the money in the owner's hands by stop notices pursuant to section 3 of the Mechanics' Lien law, and whether the notices given were in due form to comply with that section.

The first notice served was that of Adamson & Son, who, under employment by Rudolph, had put into the building the entire plumbing work called for by Rudolph's contract with the owner, including bathroom, toilet and pantry fixtures, and the work of installing them. The amount due from Rudolph to

these claimants was $665. Payment of this amount was duly demanded by Messrs. Adamson of Rudolph and by him refused, whereupon notice in writing was served by Messrs. Adamson upon the owner, setting forth that they had done work and furnished materials for and in the erection, altering and remodeling of his building (describing it); that Rudolph was indebted to them for such labor and materials in the sum of $665; that he had refused to pay the said sum of money to them and that the owner was thereby required to retain out of the moneys due or to become due from him to Rudolph the said sum of $665, and to pay the same to the Messrs. Adamson.

Next in order was a stop notice served by Chandler & Maps, lumber merchants, for $551.59, the amount indisputably due at the time from Rudolph to them for lumber and other building materials, which amount was subsequently reduced by payments made by the owner so as to leave a balance of $265 due.

Next in order were two claims, one being that of Poole, the contracting mason, for $619.28, due from Rudolph to him for doing the mason work and furnishing the necessary materials for the same, and the other being the claim of Wickliffe, a contracting painter, for $460.50.

The learned vice-chancellor decided against the validity of the Adamson claim—*first,* on the ground that section 3 of the Mechanics' Lien law gives a lien upon the fund in the hands of the owner only to materialmen strictly so called, and to journeymen or laborers employed by the contractor, and not to persons who furnish both labor and materials, or who install materials in the building under contract with the contractor; and *secondly,* on the ground that the Adamson notice was defective (*a*) because it did not show that the materials were actually used in the building; (*b*) because it did not distinguish between materials and labor and show how much was due for materials, which the learned vice-chancellor held was the limit of Adamson & Son's lawful claim, and (*c*) because it did not expressly state that demand had been made upon the contractor for payment.

The vice-chancellor decided in favor of the Chandler & Maps claim because this was for materials solely, and their stop notice

was in due form in the respects mentioned, as well as in other respects. No question is made here about the validity of this claim, beyond the insistment of Messrs. Adamson that their own claim is valid and is entitled to priority of payment.

If the Adamson claim is valid, it, taken together with the admitted claim of Chandler & Maps, will exhaust the fund and render it unnecessary to consider the claims of Messrs. Poole and Wickliffe. The vice-chancellor decided against these latter claims, with the result that he advised a decree that the claim of Chandler & Maps be first paid out of the fund and the balance of the fund be held subject to the order of Rudolph.

The pertinent language of section 3 of the Mechanics' Lien law is as follows:

"Whenever any master workman or contractor shall, upon demand, refuse to pay any person who may have furnished materials used in the erection of any such house or other building, or any journeyman or laborer employed by him in the erecting or constructing any building, the money or wages due to him, it shall be the duty of such journeyman or laborer, or materialman, to give notice in writing to the owner or owners of such building of such refusal, and of the amount due to him or them and so demanded, and the owner or owners of such building shall thereupon be authorized to retain the amount so due and claimed by any such journeyman, laborer or materialman out of the amount owing by him or them on the contract, or that may thereafter become due from him or them on such contract for labor or materials used in the erection of such building, giving the master workman or contractor written notice of such notice and demand; and if the same be not paid or settled by said master workman or contractor, such owner or owners, on being satisfied of the correctness of said demand, shall pay the same," &c. *P. L. 1898 p. 538.*

The learned vice-chancellor rejected the suggestion that the words "any person who may have furnished materials used in the erection of any such house or other building" might be deemed to cover the case of a plumber who furnishes fixtures set up and installed in the building, including as well the cost of the work of installation as the cost of the fixtures themselves, deeming that the force of the word "materialman," as used in the latter part of the section, prevented the adoption of such a construction, and that this term, as used in the section, practically means one who has furnished materials only; that is, one who simply supplies to the building, or for use in the build-

ing, materials which someone else is to incorporate in the building by his labor.

In our opinion, this is too narrow a reading of the letter of the section, and fails to give due effect to the spirit of the act and to the antithesis that exists between the first and third sections. The first section gives a lien upon the building itself in ordinary cases (there being no filed contract) for any debt contracted and owing to any person for labor performed or materials furnished for the erection and construction of the building. The second section denies the benefit of the lien upon the building to all others than the contractor, where the building is erected by contract and the contract is filed. The third section supplies an alternative remedy where the contract is in writing and is filed, this remedy being by lien upon the fund in the hands of the owner owing by him to the contractor.

It has been repeatedly held that the remedy by stop notice under the third section is confined to those who are prevented from having a lien upon the building by reason of the filing of the contract. So it was held by the supreme court in *Summerman* v. *Knowles, 33 N. J. Law (4 Vr.) 202;* approved in *Frank* v. *Freeholders of Hudson, 39 N. J. Law (10 Vr.) 350, 353;* so held, also, in *Weaver* v. *Atlantic Roofing Co., 57 N. J. Eq. (12 Dick.) 547,* and so declared in this court in *Carlisle* v. *Knapp, 51 N. J. Law (22 Vr.) 330.*

Now, while the lien upon the building granted by the first section is for "labor performed or materials furnished." it has never been held that one who furnished labor and materials combined, or who furnished materials installed in the building, including the labor of installation, had no lien. On the contrary, mechanics' liens are very frequently filed by claimants whose claims are of precisely such a character as that of Messrs. Adamson & Son, so far as the nature of the service performed is concerned. In our view, this construction of section 1 throws some light upon the proper construction of sections 2 and 3. Section 2 declares that when the building is erected by contract in writing the building shall be liable to the contractor alone for "work done *or* materials furnished in pursuance of such contract," provided the contract be filed. Would it be

seriously argued that the building is liable in such a case to parties other than the contractor for work, combined with materials, furnished in pursuance of the contract, or for materials installed in the building, where the claim includes the work of installation? We think not. Yet it is manifest that section 3 is intended to take care of persons who are debarred by section 2 from their lien on the building. By this it is not meant that all persons thus debarred are within the benefit of section 3. For instance, those who furnish materials or perform labor for a subcontractor would be entitled to a lien if not debarred by the filing of the principal contract as provided by section 2. So held by this court at the present term, in *Gardner & Meeks Company* v. *New York Central and Hudson River Railroad Co., 72 N. J. Law (43 Vr.) 257.* Yet such parties are not entitled to employ the stop notice, because section 3 limits that remedy to those who have claims immediately against the principal contractor. *Carlisle* v. *Knapp, 51 N. J. Law (22 Vr.) 329.*

So, also, we may concede, for the purposes of the argument, that the vice-chancellor is correct in his view that not all claims for labor are the proper subject-matter of a stop notice under section 3. His view is that one who should furnish the labor of others for the construction of a building under employment by the contractor would have no right to employ the stop notice, and that a skilled engineer or other professional gentleman who might do work for the contractor would be in a similar plight, although in either case they would be entitled to a lien upon the building were the contract not filed. But this must be on the ground that, with respect to claims for mere labor performed, the benefit of section 3 is by its terms restricted to "any journeyman or laborer employed by him [the contractor] in the erecting or constructing any building."

But, so far as claims for materials furnished to the contractor are concerned, it is plain that section 3 of the act is intended to be the complement of section 2, for it declares that when the master workman or contractor shall upon demand refuse to pay "any person who may have furnished materials used in the erection of the building," the stop notice may be employed. In our opinion, a party who has furnished materials

in a finished form (such, for instance, as mouldings, windows, doors, mantels and the like) is as much entitled to the benefit of section 3 as a party who has furnished raw materials only, and one who has furnished materials completely installed in and forming a part of the building is as much entitled to employ the stop notice as he who has deposited the like materials outside of the building, leaving them to be installed by the contractor.

That such was the legislative intent is not negatived, we think, by the use of the somewhat technical word "materialman" in other parts of the section. The legislative history of the section was pointed out by this court in *Carlisle* v. *Knapp, 51 N. J. Law (22 Vr.) 331, 332,* and the loose origin of the legislation was given as a reason for not following the language of the enactment so closely as to defeat the obvious intention of the lawmaker.

So far as we have observed, section 3 has, until the decision of the learned vice-chancellor in the present case, been uniformly construed to allow the benefit of a stop notice to one who has installed finished materials in a building, including the cost of installation as well as the cost of materials. The question does not seem to have been disputed in any reported decision, but in *Bayonne Building Association* v. *Williams, 57 N. J. Eq. (12 Dick.) 503; 59 N. J. Eq. (14 Dick.) 617,* the claim of Cooney & Gilbertson was for mason work and materials furnished; the claim of Beardsley was for labor and materials done and furnished in erecting the stairs, and the claim of Oliver, a plumber, was likewise for work and materials. All these claims were held good both by the court of chancery and by this court. In *Donnelly* v. *Johnes, 58 N. J. Eq. (13 Dick.) 453,* Vice-Chancellor Grey allowed the claims of Leuckel, Pridham and Pullen & White, all of which were for work and materials. In *South End Improvement Co.* v. *Harden, 52 Atl. Rep. 1127,* Vice-Chancellor Reed seems to have allowed stop notice claims for work and materials combined, not distinguishable in principle from the claim now under consideration.

Upon the whole, therefore, we are of the opinion that the entire claim of the Messrs. Adamson, being for materials in finished form and installed in the building, including the work

of installation as a part of the cost of the materials *in situ,* was the proper subject of a stop notice under section 3 of the Mechanics' Lien law. This disposes, at the same time, of one of the objections taken by the learned vice-chancellor to the form of the notice, which was that it failed to distinguish between the amount due to the claimants for materials and the amount due for labor. The entire claim being lienable, there was no occasion for thus separating it.

Another objection raised to the form of the Adamson stop notice is that it did not set forth that the materials were actually used in the building. This was not much relied upon by the vice-chancellor, and is not, in our view, tenable. The notice sets forth that the claimants had "done work and furnished materials for and in the erection," &c., of the building. This, we think, amounts, in effect, to an averment that the materials were used in the building.

The sole remaining objection to the Adamson claim is that their stop notice did not expressly state that demand had been made by them upon the contractor for payment. The case shows that in fact the contractor, Rudolph, refused to pay the claim of Messrs. Adamson upon demand of payment duly made. The notice given to the owner by Messrs. Adamson mentions the refusal, but does not explicitly mention the demand. Section 3 of the Mechanics' Lien law expressly requires the claimant to give notice to the owner of the refusal of the master workman or contractor to pay the claim, but does not in terms require that the notice should set forth that a demand of payment had been made. The reason is obvious. The term "refusal," naturally, if not necessarily, imports a previous demand or request for payment. Webster's definition of "refusal" is "denial of anything demanded, solicited," &c., and he defines the verb "refuse" as meaning "to deny a request, demand, invitation or command; to decline to do what is solicited, claimed or commanded." In *Hall* v. *Baldwin, 45 N. J. Eq. (18 Stew.) 863,* Advisory Master Williams said, with reference to the statutory language now under consideration: "Refusal implies some request; it is more than omission or neglect." In *State* v. *Valentina, 71 N. J. Law (42 Vr.) 552,* this court, in construing section 136 of

the Criminal Procedure act (*P. L. 1898 p. 915*), held that in the phrase "the denial of any matter by the court which was a matter of discretion," the word "denial" implies request.

· We are referred to no reported case clearly holding that the notice to the owner must in terms mention the demand made upon the contractor. *Reeve* v. *Elmendorf, 38 N. J. Law (9 Vr.) 132; Kirtland* v. *Moore, 40 N. J. Eq. (13 Stew.) 109; Hall* v. *Baldwin, 45 N. J. Eq. (18 Stew.) 863; Building and Loan Association* v. *Williams, 57 N. J. Eq. (12 Dick.) 505,* and *Adams* v. *Wells, 64 N. J. Eq. (19 Dick.) 211,* show the importance of a demand made in fact of the contractor before notice given to the owner, but do not hold that the notice must mention the demand as distinct from the contractor's refusal. In *Donnelly* v. *Johnes, 58 N. J. Eq. (13 Dick.) 450,* Vice-Chancellor Grey said, with respect to the form of the notice: "It must be in writing and must notify the owner of such demand and refusal." But the notices he had to deal with were held defective because they did not assert either demand or refusal. On the other hand, the same vice-chancellor, in the later case of *Fehling* v. *Goings, 67 N. J. Eq. 375,* distinctly held that the statute does not require the notice to express that the claimant has demanded payment from the contractor, but only that the contractor has refused to pay, he holding that the refusal to pay usually implies a previous demand made upon the party refusing. In our view, this is the correct construction of the act.

We having thus determined that the claim of Messrs. Adamson is the proper subject of a stop notice, and that the notice given by them was in proper form, and all other facts necessary to establish their claim being indisputably shown, it follows that the decree of the court of chancery should be reversed and the cause remitted, with directions to make a decree for the payment first out of the fund of the claim of Messrs. Adamson, including their costs below and in this court, and for the payment of the residue of the fund to Messrs. Chandler & Maps.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—12.