148    CASES IN CHANCERY.

Seton Hall College *v.* Calumet Const. Co.          *81 Eq.*

SETON HALL COLLEGE

*v.*

CALUMET·CONSTRUCTION COMPANY et al.

[Decided June 25th, 1912.]

1. Evidence in relation to proof of the proper demand upon the contractor, and its refusal to pay the claimants under the stop notice, examined, and *held* insufficient.

2. It is the settled law that a person to be in a position to impound money in the hands of the owner for his benefit by notice under the third section of the Mechanics' Lien law must be a creditor of the contractor for work done on or materials furnished for the building; and that his debt must be due, and that he must have demanded payment of the contractor of a sum which the contractor is obliged to pay at once, *i. e.*, the exact sum due, or less.

3. Where the contracts of certain subcontractors provide that such subcontractors shall be paid monthly on requisitions eighty per cent. of the value of the work done, and that the remaining twenty per cent. shall be withheld by the contractor until either the completion of the building or the completion of the work contracted for, and it appearing that all the demands that were made by these subcontractor claimants included the deferred percentages, all the notices served included the same percentages (these percentages not having come due until long after the demands were made and the notices served), such claimants cannot succeed upon their stop notices.

4. The contention that when the contractor failed, all the subcontracts must be considered as abandoned and that the subcontractors may then have an action at law for the cost of the labor and materials furnished by them respectively for the building, that the question of the amount of such claim can ·be tried in this court, and that this court should then award to the claimant such sum of money as might be found to be owing to him upon that basis is untenable, because the damages in such case will be unliquidated in their nature and would have to be assessed by a jury.

5. Section 3 of the Mechanics' Lien law contemplates a dealing with fixed sums and not with unliquidated amounts, there being no machinery thereby provided by which the owner can be certified as to the amount of unliquidated damages, nor any method provided by which he may be satisfied of the correctness of the demand for damages nor can the demand be made accurate.

6. The fact that when the contractor failed these subcontractor claimants finished their respective contracts for the new contractor and

received from him the remainder of their contract moneys, so that without the consent of the contractor they split up their contracts and causes of action, excludes them from coming within the letter or spirit of the lien law.

7. Notwithstanding the contractor's failure to complete the building in accordance with his contract, he still has an interest in the fund in court for the reason that some portion of it may be paid to him, and his rights must therefore be kept in mind.

On final hearing on decree of interpleader.

*Mr. Frederick F. Guild,* for the J. F. Glasby Lumber Company.

*Mr. Gilbert Collins,* for the receivers of the Calumet Construction Company.

*Messrs. Weller & Lichtenstein,* for the Standard Concrete Steel Company and Maxwell & Dempsey.

*Mr. George H. Peirce,* for the trustee in bankruptcy of Joseph Bleeker and the Browe Company.

*Mr. William R. Howe,* for Spottiswood & Cusac.

*Mr. William H. Carey,* for Thomas McCullough.

*Messrs. Lum, Tamblyn & Colyer,* for Gustave A. Kimmerle.

*Mr. Henry Hahn,* for Morris Elsberg.

*Messrs. Herrmann & Steelman,* for the South Amboy Terra Cotta Company.

*Mr. Gaetano M. Belfatto,* for the Adamant Manufacturing Company.

HOWELL, V. C.

On June 7th, 1909, the Calumet company made an agreement to erect an addition to the college building of Seton Hall Col-

150        CASES IN CHANCERY.

Seton Hall College *v.* Calumet Const. Co.        *81 Eq.*

lege, under which agreement the work was prosecuted until about February 14th, 1910, when a notice was served upon it requiring it to proceed to supply materials and workmen toward the performance of the contract within three days, else the owner would finish the work and charge the cost thereof to the Calumet company. The Calumet company did not comply, and the owner finished the building; it was completed in June or July of the same year, long after the service of the notices in controversy. There remained in the hands of the college after the completion of the work the sum of $17,280.21, which was paid into court upon a decree of interpleader, which resulted from the filing of the bill herein. Of the thirty defendants only fourteen appeared. At the hearing of these fourteen claims the following were allowed as claimed:

| | |
|---|---|
| South Amboy Terra Cotta Company......... | $800 15 |
| Gustave L. Kimmerle...................... | 51 03 |
| Moses Esberg ............................ | 584 73 |
| Spottiswoode Cusac Company.............. | 363 05 |
| James McCullagh (first notice)............. | 1,507 24 |
| " " (second notice)........... | 850 57 |

The following claims are contested:

| | |
|---|---|
| Glasby Lumber Company................... | $4,200 00 |
| Adamant Manufacturing Company.......... | 1,155 33 |
| Standard Concrete Steel Company.......,.... | 6,200 00 |
| Maxwell & Dempsey...................... | 2,000 00 |
| Joseph Bleeker ........................... | 2,300 00 |
| The Browe Company...................... | 904 21 |

These will be taken up and disposed of in the order named.

1. *The Glasby Lumber Company Claim.*—The stop notice on which this claim is founded is in proper form and demands that the owner shall pay to it the sum of $4,000. The validity of the claim depends upon the proof of the proper demand upon the contractor and its refusal to pay. The notice was dated and served on January 27th, 1910; the contract between the claimant and the contractor required the claimant to furnish carpenter work and trim for the building for which the contractor agreed to pay the sum of $4,200. This was in the form of an estimate

made by the claimant and accepted by the contractor. Mr. Glasby states that on January 21st and 22d he made a demand upon the contractor for the payment of $4,200, the whole amount of the contract money. There had then been delivered material of the value of $3,829.75, so that clearly at that time there was a demand of a much larger sum than was due from the contractor to the claimant. On January 26th the claimant delivered material of the value of $170.25, bringing up the whole amount of the deliveries to $4,000, and this was made the basis of the stop notice that was served on the following day, but no further or other demand was proved. There was an attempt to prove a demand by Mr. Taaffe, the president of the claimant, about January 1st, which of course would have been too early, and again about eight or ten days before the notice was served, which likewise would have been too early, because at that time materials to the amount of not more than $3,829.75 had been delivered. No other demand was shown, and the failure in this regard invalidates the claim. It has been held in a long line of cases in this state, of which *Reeve* v. *Elmendorf, 38 N. J. Law* (*9 Vr.*) *125*, and *Kirtland* v. *Moore, 40 N. J. Eq.* (*13 Stew.*) *106*, are well known examples, that a person to be in a position to impound money in the hands of the owner for his benefit by notice under the third section of the Mechanics' Lien law must be a creditor of the contractor for work done on or materials furnished for the building; and that his debt must be due and that he must have demanded payment of the contractor of a sum which the contractor is obliged to pay at once, *i. e.*, the exact sum due, or less.

The doctrine of these cases was approved by the court of errors and appeals in the case of *Hall* v. *Baldwin, 45 N. J. Eq.* (*18 Stew.*) *858*, and must be considered as established law in this state. It is true that Vice-Chancellor Reed, in *Evans* v. *Lower, 67 N. J. Eq.* (*1 Robb.*) *232*, allowed a claim as valid where there had been a demand of an excessive amount; but this case seems to me to be distinguishable from the case in hand; if not distinguishable, it runs counter to the general current of authority in this state, including *McPherson* v. *Walton, 42 N. J. Eq.* (*15 Stew.*) *282*, a case which has been generally followed.

152 CASES IN CHANCERY.

Seton Hall College *v.* Calumet Const. Co. *81 Eq.*

It is likewise true that recently the legislature has permitted the claimant to demand the amount due to him, "specifying said amount as nearly as possible;" but this statute became effective not earlier than April 12th, 1910, some weeks after the notices in this case were served, and therefore is inapplicable to the present situation. The cases on this point are collected by Mr. Justice Pitney in the case of *Beckhard* v. *Rudolph,* '68 *N. J. Eq.* (*2 Robb.*) *740.*

2. *The Standard Concrete Steel Company's Claim.*—This company entered into a contract with the Calumet company for the fireproofing of the building in question. The contract was originally for $20,000; there was an addition to it of $100, making the total contract price $20,100, on account of which $7,000 were paid in cash prior to the failure of the contractor. The contract provided for monthly payments of eighty per cent. of the work done during the previous month, the reserve of twenty per cent. being held back until the completion of the contract. The requisitions for December, 1909, and January, 1910, amounted to $6,200. For this amount two notes were given, one for $4,000, the other for $2,200. They both matured prior to the service of the notice of February 23d, 1910, and, undoubtedly, that portion of the claimant's contract money was due at the time of the service of that notice. While the evidence of the demand is not as full and complete as might be wished, still I think it is sufficient to justify the allowance of the claim for $6,200, with interest from February 23d, 1910. The remainder of the claim was not due at the time of the demand and notice.

*The Remaining Claims.*—There is an objection to all the other disputed claims, and that arises from their respective contracts. Their contracts provide that they shall be paid monthly on requisitions eighty per cent. of the value of the work done, and that the remaining twenty per cent. shall be withheld by the contractor until either the completion of the building or the completion of the work contracted for. All the demands that were made by these claimants included the deferred percentages; all the notices that were served included the same percentages. These percentages not having come due until long after the de-

mands were made and the notices served, it is quite apparent that the claimants cannot succeed upon their notices. It is argued that when the contractor failed all the subcontracts must be considered as abandoned, and that the subcontractors may then have an action at law for the cost of the labor and materials furnished by them respectively for the building; that the question of the amount of such claim can be tried in this court, and that this court should thereupon award to the claimant such sum of money as might be found to be owing to him upon that basis. This question turns upon another, viz., whether in a case of that sort the subcontractor's claim is for liquidated or for unliquidated damages. This question was settled in this state by the cases of *Boyd* v. *Meighan, 48 N. J. Law (19 Vr.) 404,* and by *Kehoe* v. *Rutherford, 56 N. J. Law (27 Vr.) 23; Wilson v. Borden, 68 N. J. Law (39 Vr.) 627.* The damages in such case would be such as could not be readily computed. They are unliquidated in their nature and would have to be assessed by a jury.

Besides the Mechanics' Lien law does not have in view any dealings with unliquidated damages. Section 3 contemplates a dealing with fixed sums and not with unliquidated amounts. There is no machinery provided by which the owner can be certified as to the amount of unliquidated damages, nor any method provided by which he may be satisfied of the correctness of the demand; neither can the demand be made accurate. The claimant would be unable to tell beforehand what the amount of his demand should be, and it would be very unsatisfactory for the owner to make any payments whatever on account of such claims. Everyone would have to be submitted to a jury before it could be paid. The owner would probably be right in refusing to recognize that kind of a demand for the reason that he could not be satisfied that the claim was correct.

The act contemplates that the owner shall pay only for labor and materials which have been furnished for the building. A stop notice which is for unliquidated damages might include many things between the contractor and subcontractor which did not go into the building at all. *Kirtland* v. *Moore, supra.* Besides it appears that when the contractor failed these claimants

finished their respective contracts for the new contractor and received from him the remainder of their contract moneys, so that without the consent of the contractor these claimants split up their contracts and causes of action, doing in this respect what the Glasby company did. This I conceive to be not within the letter or the spirit of the lien law and contracts which come within its purview. I do not see how the claimants can succeed in establishing a portion of their debts against the contractor and another portion against someone else, unless there is a provision in the contract permitting it, or unless it is done with the consent, express or implied, of the contractor. Notwithstanding his failure to complete the building in accordance with his contract, he still has an interest in the fund in court, for the reason that some portion of it may be paid to him, as was done in *Hall* v. *Baldwin, supra,* and his rights must therefore be kept in mind. These considerations lead me to disallow the claims of the Adamant Manufacturing Company, Maxwell & Dempsey, Joseph Bleeker and the Browe Company.

The claims which are allowed will be paid in their proper order of priority.