CHARLES STEUERWALD et al.

*v.*

WILLIAM L. MUNN et al.

[Submitted July 19th, 1919. Decided July 21st, 1919.]

Where materialmen under a subcontractor file stop-notices under *P. L. 1917 p. 821,* such notices are limited to the recovery of the value of the materials furnished after the act went into effect, as it does not appear that the act is intended to have any retroactive effect.

On bill, &c.

*Mr. John A. Coan,* for the defendants South Amboy Lumber and Supply Company and George E. ·Applegate.

*Mr. Charles T. Cowenhoven,* for the defendants Munn and Lovely.

FOSTER, V. C.

This action was on a bill of interpleader, and the issue ·was between materialmen on stop-notices served for debts claimed to be due from the contractor, or a subcontractor.

At the conclusion of the hearing on March 28th, 1919, a decree was advised by me, under which various claims were satisfied from the fund of $4,573.23 paid into court; and certain questions were reserved respecting the balance of about $986.34 still held for distribution and claimed by the defendants Munn, Lovely, South Amboy Lumber and Supply Company and Applegate.

The controversy between them arises out of the following circumstances: In December, 1916, complainant entered into a contract with the defendant Munn for the erection of a building which was not completed until nearly a year later. By an act approved March 29th, 1917, and which took effect upon its approval *(P. L. 1917 ch. 241 p. 821)*, section 3 of the Mechanics' Lien law was amended to extend its provisions to debts owing to materialmen and others by subcontractors, and providing for the service of the same, stop-notices upon the owner and the payment by the owner of such debts owing by subcontractors, on the same conditions as the owner had prior to such amendment been authorized to pay similar debts of the general contractor.

In the course of the work, Munn, the general contractor, employed one Deats as a subcontractor of the mason work, and the defendant South Amboy Lumber and Supply Company furnished Deats materials which were used in the building, to the amount of about $900, and on Deats' refusal to pay this account,

the lumber and supply company served the usual stop-notice on the owner on December 15th, 1917.

Prior to March 29th, 1919, the date when the amendatory act became effective, the lumber and supply company had furnished Deats materials of the value of $415.94, and, subsequently, it furnished him materials amounting to $395.77, the balance of its total claim.

George E. Applegate, another defendant, furnished Deats with materials amounting to $130.41, which were used in the building, and upon Deats' failure to pay, he also served notice on the owner on November 26th, 1917. Of the Applegate claim, materials amounting to $10.41 were furnished prior to the amendment of the act, and the balance, amounting to $29, were furnished subsequently.

The payment of the claims of the lumber and supply company and of Applegate is resisted by Munn, the general contractor, and by Lovely, another claimant against Munn, who served a stop-notice on April 18th, 1918, claiming $1,414.60, on which $943.17 has been paid.

The grounds of objection are, that as the lumber company and Applegate, as materialmen under the subcontractor, are permitted to resort to the fund for the payment of any part of their respective claims only by reason of the amendatory act of 1917, and that as their rights rest on that amending act, they must be limited in their recovery to the value of the materials they furnished subsequently to the date when the amendment became effective.

Prior to the passage of the amendment, neither the general contractor nor the owner was authorized or obliged to pay for materials, &c., furnished a subcontractor; and moneys due from the owner to the general contractor could not, by the service of notice under section 3 of the act, be impounded for that purpose; and unless it clearly appears from the language and objects of the amendatory act, that it was intended to have a retrospective as well as prospective effect and operation, the claims of the lumber and supply company and of Applegate must be limited to the value of the materials furnished by them after the amendment became effective.

I do not find anything in the language or objects of the amendment to indicate any design that will justify giving it a retroactive effect. The words of the amendment, "who may have furnished materials," &c., plainly refer to transactions that took place prior to the service of the notice authorized thereby, and not to transactions that occurred prior to the act becoming effective.

This conclusion is in line with a long list of cases, including *Vreeland* v. *Bramhall, 39 N. J. Law 1; Citizens Gas Light Co.* v. *Alden (Court of Errors and Appeals), 44 N. J. Law 648; In re St. Michael's Church, 76 N. J. Eq. 524;* and it is further warranted by the fact that to give a retroactive effect to the amendment would be to deprive Lovely, a materialman under the general contractor (and whose stop-notice was served subsequently to those of the lumber and supply company and of Applegate), of the remedy he had under section 3 of the act, before the passage of the amendment, as there are not sufficient funds to pay in full all the claimants, as under a retroactive effect given to the amendment the funds would be exhausted in the payment, in the order of the service of stop-notices, first by the claim of Applegate, and then by the payment of the balance on account of the claim of the lumber and supply company.

A decree will therefore be advised for the payment, first, of the balance due on the Lovely claim; secondly, for the payment of the claim of Applegate for the value of the materials furnished by him after the amendment became operative; thirdly, for the payment of the claim of the lumber and supply company for materials furnished after the date of the approval of the amendatory act, and lastly, the balance of the fund, if any, to be paid to Munn, the general contractor.