86 N.J. Super. 422 (1965)
207 A.2d 186
CHESEBRO-WHITMAN CO., INC., OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EDENBORO APARTMENTS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1964.
Decided February 8, 1965.
*423 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. William L. Dill, Jr. argued the cause for appellant (Messrs. Stryker, Tams & Dill, attorneys; Mr. John J. Carlin, of counsel).
Mr. Vincent J. Apruzzese argued the cause for respondent (Mr. Merritt T. Viscardi, on the brief).
*424 The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff rented steel scaffolding to a subcontractor of the general contractor in connection with the erection of an apartment house in Orange for the defendant corporation, owner of the property. The general construction contract was duly filed with the county clerk of Essex County, thereby precluding mechanics' liens except for the general contractor. N.J.S. 2A:44-75. Plaintiff, being unpaid for its rental charge, duly filed and served upon defendant a stop notice for the amount due to it. N.J.S. 2A:44-77 et seq. Upon refusal of defendant to make payment, plaintiff brought this action to enforce the stop notice provisions of the statute.
On motion by defendant, Judge Matthews dismissed the complaint in the Superior Court, Law Division, on the sole ground that, not being the legal subject of a mechanics' lien claim, plaintiff's demand could no more ground a stop notice right of action under the applicable interrelated statutes. Plaintiff stipulated in the trial court that the nature of its service to the construction project was such that its claim was not properly lienable under the Mechanics' Lien Law even had the contract not been filed. Its contention was, however, that the statute encompasses broader coverage for stop notices than for mechanics' liens, and, properly construed, brings its claim within the stop notice protection.
On the argument of the appeal before this court we extended the scope of investigation to the question of the lienability of plaintiff's services, being concerned over what then seemed to us a debatable justification for the trial stipulation against lienability and the consequent possibility that decision herein might be premised upon an erroneous assumption as to the important mechanics' lien law question collaterally involved. Thus we have had the benefit of supplemental briefs on the issue of lienability of the claim. It is also to be noted that plaintiff has conceded on this appeal that it delivered the scaffolding materials to the job site and removed them to its warehouse after the building was erected. The scaffold was presumably erected and dismantled by the contractor or subcontractor. *425 The materials were presumably usable by plaintiff for other jobs after they had served their purpose for that here in question. The rental claim was consequently solely for the temporary use of the materials during construction of this building.

I.
We direct our attention first to the issue determined against plaintiff at trial level  whether the stop notice statutory provisions contemplate broader coverage than those pertaining to the lien. The question has apparently not been explicitly decided in any reported decision in this State.
The stop notice provision applies in favor of a person who has furnished a contractor or subcontractor materials "for use in or about the erection, construction," etc., of a building or of laborers "employed" by a contractor or subcontractor "in erecting, constructing," etc., any building. N.J.S. 2A:44-77 (emphasis added). Plaintiff's contention here is that it has supplied materials rather than labor.
Mechanics' liens are, in general, created by the statute "for labor performed or materials furnished for the erection, construction" etc., of the building. N.J.S. 2A:44-66(a) (emphasis added). But the same section, in allowing liens for erecting docks, wharfs, etc. (c); for improving land by drainage, dredging, etc. (d); for furnishing or repairing fixed machinery in mills and factories (e); for digging or drilling wells (f); or for seeding or planting shrubs, trees or plants (g), does in each such case use the language, "in or about," as in the stop notice provision noted above, or similar expressions.
The whole emphasis of plaintiff's argument is that the prepositional language "in or about," in the stop notice section, connotes a legislative design for broader coverage than the assertedly more restrictive "for," as found in the general mechanics' lien provision. From this premise plaintiff infers a legislative intent to allow a stop notice claim for rental of *426 equipment necessary to the erection or construction of a building even if a mechanics' lien could not be based thereupon. But the history of this interrelated statutory scheme and of cognate legislation is too laden with indicia of a contrary legislative intent to permit of any latter day de novo exegesis of the present statutory language  even were any attempt to make one persuasive of the result plaintiff espouses  which of itself is dubious.
Full discussion of the history of mechanics' lien legislation in this State may be found in our cases. See, e.g., McNab & Harlin Mfg. Co. v. Paterson Building Co., 71 N.J. Eq. 133, 140-142 (Ch. 1906), affirmed 72 N.J. Eq. 929 (E. & A. 1907); Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc., 15 N.J. 418, 420-425 (1954), rehearing denied 16 N.J. 47 (1954). Certain aspects thereof are helpful in the present connection.
Mechanics' lien legislation had been enacted in Maryland and Pennsylvania before the first statute appeared in New Jersey in 1820. L. 1820, p. 124; McNab, supra (71 N.J. Eq., at p. 138). The mechanics' lien concept is purely statutory, there being no common-law background. A critical need existed for new construction, and the statutes were enacted as a policy measure to encourage artisans in the building trades. But Pennsylvania's experience had pointed up what the New Jersey legislators saw as a serious defect. While such legislation would encourage artisans, it might tend to discourage owners, because their property could be subjected to liens by remote and possibly unforeseeable claimants. For this reason the 1820 New Jersey statute had two provisions; the first afforded the basic lien remedy to mechanics and materialmen; the second was a contract-filing provision which enabled the owner to restrict the liability of his property to potential liens only for the one with whom he was in privity, the prime contractor. McNab, supra (71 N.J. Eq., at p. 141).
Although the filing provision afforded protection to property owners, its collateral effect was to cut off the liens of remote laborers and materialmen, relegating them to their *427 common-law remedies against prime contractors or subcontractors who were often judgment-proof. In 1835 the first stop notice provision appeared, L. 1835, p. 148, giving a statutory remedy to any unpaid "journeyman or laborer." Elmer's Digest (1838), p. 339. There was no mention of materialmen. Nor did the stop notice provision refer to the filing section; so the courts initially construed the remedies as independent, and, in the absence of filing, cumulative. McNab, supra (71 N.J. Eq., at p. 142).
In subsequent re-enactments and amendments, however, the stop notice remedy was extended to materialmen, and the lien, the filing and the stop notice provisions were arranged consecutively. See L. 1853, p. 437, Nixon's Digest (2d ed. 1855), p. 487. This arrangement, and the use of the words "such building" in the stop notice section (section 3), led the courts to conclude that a materialman could invoke a stop notice only if the contract for the building were on file, as provided for in section 2. Summerman v. Knowles, 33 N.J.L. 202, 204 (Sup. Ct. 1868). (There remained some confusion as to laborers' remedies (id., at p. 204), but this was later resolved in favor of construction parallel to that for materialmen, see Weaver v. Atlantic Roofing Co., 57 N.J. Eq. 547, 550 (Ch. 1898).) The present wording of N.J.S. 2A:44-77, which specifically refers to the filing provision (N.J.S. 2A:44-75), removes all doubt, and makes the availability of a stop notice dependent upon the filing of the contract.
The interrelationship of the three central sections of the Mechanics' Lien Law is thus apparent. It is clear that the lien provision was enacted to protect mechanics and materialmen; and that the filing provision was adopted to afford a measure of protection to the owner of the realty. And the inference that the stop notice provision was designed to restore protection to classes of claimants who would have been within the lien section but for the filing of the contract has long been accepted. Thus, in Beckhard v. Rudolph, 68 N.J. Eq. 740 (E. & A. 1905):
*428 "The first section gives a lien upon the building itself * * *. The second section denies the benefit of the lien * * * where * * * the contract is filed. The third section supplies an alternative remedy where the contract is in writing and is filed * * *.
It has been repeatedly held that the remedy by stop notice under the third section is confined to those who are prevented from having a lien upon the building by reason of the filing of the contract. * * *
* * * [I]t is manifest that section 3 is intended to take care of persons who are debarred by section 2 from their lien on the building. * * *" (at pp. 744-745)
Compare statements in cases arising under successive formulations of the statute and involving the sufficiency of the filing, wherein the alternative nature of the remedies is accepted implicitly. Weaver v. Atlantic Roofing Co., supra (57 N.J. Eq., at p. 550); Pfeifer v. Reiman, 10 N.J. Misc. 898, 904-905, 161 A. 825 (Ch. 1932); Suburban Lumber Co. v. Gerber, 17 N.J. Super. 33, 37 (App. Div. 1951). See also Evans v. Lower, 67 N.J. Eq. 232, 235 (Ch. 1904), wherein it was assumed that a non-lienable claim for tools would not support a stop notice demand.
The history of the status of the classes of claimants within the two statutory provisions also tends to refute plaintiff's position. The general rule in this area is stated in 36 Am. Jur., Mechanics' Liens, § 52, p. 47, and was quoted with approval by Mr. Justice Hall in a case arising under the Municipal Mechanics' Lien Law (see infra), Morris Co. Industrial Park v. Thomas Nicol Co., 35 N.J. 522, 531 (1961):
"Persons supplying materials to a materialman or a subcontractor must come clearly within the terms of the statute, or they can claim no lien. They are so far removed from the owner that the privilege of a lien is not often extended to them, and the plainest expressions of law must be used to entitle them to this remedy."
(Plaintiff here seeks to bring itself within the statute in the character of a subcontractor's materialman.) In Gardner & Meeks Co. v. N.Y. Central & H.R.R. Co., 72 N.J.L. 257 (E. & A. 1905), the court reviewed the authorities, found that the lien provision was extremely broad ("any debt * * * any person"), and held that a subcontractor's materialman *429 was entitled to assert a lien. But under the same 1898 enactment, a stop notice was not available to such a person because "[t]he remedy provided by the third section extends only to creditors of the contractor named in the filed contract." Fehling v. Goings, 67 N.J. Eq. 375, 382 (Ch. 1904); Seton Hall College v. Calumet Const. Co., 81 N.J. Eq. 148, 151 (Ch. 1912). It was not until 1917 that stop notices were made available to subcontractors' materialmen. L. 1917, c. 241, p. 821; Steuerwald v. Munn, 90 N.J. Eq. 474, 475 (Ch. 1919). Thus, although there is no longer any question as to the coverage of that class of claimants under N.J.S. 2A:44-77, the statutory history in this regard indicates another phase of a developing legislative intent to bring the stop notice provision into approximate parity with the lien section. There is no extrinsic evidence, however, that the scope of the former was ever intended to exceed the latter in any way.
As seen earlier, plaintiff seeks to distinguish the sections on the ground that the lien provision uses the preposition, "for," while the stop notice provision says, "in or about." Although the sections are in pari materia, and linguistic differences may therefore indicate real distinctions in legislative intent, see generally 2 Sutherland, Statutory Construction, § 5201, pp. 529 et seq. (3d ed. 1943), no tenable basis for such distinction can be found here. The "in or about" language was introduced for the first time in 1930, but in the lien section only. L. 1930, c. 212, p. 973. Prior thereto both the general mechanics' lien and stop notice sections were devoid of the "in or about the erection" language. See, e.g., 3 C.S. (1910) 3291, 3294, showing no significant difference in the provisions ("furnished for the erection," etc., as to liens, and "used in the erection," etc., as to stop notices). The phrase, "in or about," was used for both categories in L. 1937, c. 138, approved June 2, 1937. But by the Revised Statutes of 1937, which became effective December 30, 1937, "in or about" was retained in the stop notice section, R.S. 2:60-116, but "for the erection" restored to the lien section, R.S. 2:60-107. As to why any of these legislative *430 steps from 1930 through 1937 were taken, there is no clue, nor do the parties suggest an explanation. The Revised Statutes formulations passed into Title N.J.S. 2A intact, as revised in 1951, effective January 1, 1952.
There is nothing in the background of the act as it now stands, or in its language, to convince us that the Legislature ever had or now has in mind a design for broader claims coverage in respect of stop notices than for mechanics' liens.
The case of Frank v. Board of Chosen Freeholders of Hudson, 39 N.J.L. 347 (Sup. Ct. 1877), relied upon by plaintiff, is not persuasive for its position. In Frank, a painting subcontractor sought to enforce a stop notice against an owner-municipality. The contract had been duly filed, but defendant demurred to the complaint on the ground that settled New Jersey public policy prohibited a lien against public realty; and that since the stop notice was merely an alternative, in cases of contract filing, to the lien, the non-availability of a lien necessarily also precluded the stop notice relief. The court accepted the first proposition, and also the premise for the ultimate conclusion, but not the conclusion itself. It ruled that no consideration of public policy militated against enforcing the stop notice against the municipality-owner, and that therefore the stop notice section should be given the normal application required by the factual existence of the statutory conditions which activated it. The case does not hold that a type of claim which would not ordinarily support a lien will found a stop notice.
We thus conclude that unless plaintiff can demonstrate that a claim for rental to a subcontractor for scaffolding materials used on a construction (not involving labor by claimant in the use of the materials) is lienable within the proper construction of N.J.S. 2A:44-66, no stop notice claim can be asserted therefor, even assuming satisfaction of the other requisites of the statute for a stop notice claim, as here. It remains to consider the issue posed, which, as noted above, was raised on this appeal by the court on its own initiative *431 and is now the subject of opposing supplemental briefs by the parties.

II.
The only allusion in any New Jersey case cited to us touching upon lienability of tools or equipment under the general Mechanics' Lien Act is Evans v. Lower, supra. Without discussion, the court denied a $6.41 bill for tools furnished the contractor, saying: "This part of the bill was not a lienable claim * * *." (67 N.J. Eq., at p. 235). Plaintiff cites the original file in that case to support its contention that the bill was for the sale price, not the rental, of the tools there involved. It concedes that a claim for the sale price of tools which would be expected to outlast the particular job would not be lienable. It urges that the rental price for the use of tools or equipment during their expected reasonable period of employment in the construction of a building is distinguishable, and that such claim is lienable, as being only for an amount of money fairly allocable to the contribution of the equipment to the actual erection of the building.
Plaintiff recognizes that, theoretically, its claim must be classified as either for labor or for materials in order to meet the lien act. It elects to stand on the category of materials. Defendant resists this, basically, on the thesis that to be lienable the materials must have actually been incorporated into the building. It is true that the language of the cases is generally accordant with that philosophy. See Van Pelt v. Hartough, 31 N.J.L. 331, 332 (Sup. Ct. 1865); Gardner & Meeks Co. v. N.Y Central & H.R.R. Co., supra (72 N.J.L., at p. 258). However, as recognized in the case last cited, id., at pages 258-59, the principle is not necessarily applicable literally. Where prevention of actual incorporation of the materials, or some of them, into the building, is due to factors not attributable to the materialman, e.g., insolvency of the owner, the lien is not defeated. Morris County Bank v. Rockaway Manufacturing Co., 14 N.J. Eq. 189, 191-192 (Ch. *432 1862); Cf. Washington Construction Co., Inc. v. Spinella, 13 N.J. Super. 139, 143 (App. Div. 1951), affirmed 8 N.J. 212 (1951).
Another exception to the "actual incorporation" test is the rule that transportation charges are lienable. Davis v. Mial, 86 N.J.L. 167 (E. & A. 1914), allowed a materialman a lien for the charge of transporting the materials furnished to the job site. Although the court approved the reasoning of the trial judge approving the lien as being for labor rather than materials, the opinion was subsequently given the more sensible reading of assimilating the transportation claim to materials rather than labor. Harry Pinsky & Son Co. v. Wike, 101 N.J. Eq. 45, 49 (Ch. 1927), affirmed o.b. 103 N.J. Eq. 18 (E. & A. 1928). But Davis has also been accepted as authority to permit the assertion of liens by carriers who were not materialmen. West Jersey & S.S.R. Co. v. Cape May County, 100 N.J. Eq. 181, 182 (Ch. 1926); Central R.R. Co. of N.J. v. Gallena-Poole, 107 N.J. Eq. 267, 268-269 (Ch. 1930), affirmed o.b. 110 N.J. Eq. 559 (E. & A. 1932).
A third exception to the rule of actual incorporation is found in some foreign jurisdictions in cases where materials not becoming a physical part of the erected building but actually consumed in an essential construction process (e.g., lumber for scaffolding or for concrete forms) are held lienable. 57 C.J.S. Mechanics' Liens § 44, at p. 537; Moritz v. Lewis Construction Co., 158 Wis. 49, 146 N.W. 1120 (Sup. Ct. 1914); Annotation 51 L.R.A., N.S., 1040 (1914). Cf. Jankowitz v. Morristown, 111 N.J. Eq. 201, 204 et seq. (Ch. 1932) (under Municipal Lien Act; gasoline and oil for construction machinery, lumber for crossties to support rails for tramcars, and for a platform for a steam shovel, all such lumber being consumed in the work, p. 204). This exception is obviously not applicable in the instant case. The claim is not for the value of materials worn out on the job, but rather for the rental value of materials returned intact to the supplier for apparently indefinite future use.
*433 A definitive solution to the question here presented requires exploration beyond the cases construing the general Mechanics' Lien Act and into the area of the cognate Municipal Mechanics' Lien Law, N.J.S. 2A:44-125 et seq., the related Bond Act, N.J.S. 2A:44-143 et seq., and Trust Fund Act, N.J.S. 2A:44-147 (should be 148), and the cases construing them.
The original Municipal Mechanics' Lien Act provided for a lien against money due from a municipality to the prime contractor in favor of any "laborer, mechanic, merchant or trader" performing any labor or furnishing any material "toward the performance or completion" of a contract for a public improvement, said lien to enure to anyone employed by or furnishing materials to a contractor or subcontractor. L. 1892, c. 232, § 1, pp. 369-370. This act was construed to be in pari materia with the Mechanics' Lien Law. See Arzonico v. Board of Education, &c., 75 N.J.L. 21 (Sup. Ct. 1907), holding the 1892 act to provide a broader remedy which in certain instances was cumulative and concurrent with the stop notice provision of the general act; Central R.R. Co. of N.J. v. Gallena-Poole, supra.
In 1933 the Municipal Lien Act was broadened by amendment, L. 1933, c. 227, but before that occurred it was construed in several cases which bear significantly upon the issue before us here, in view of the close comparability of coverage of the municipal and the general lien laws prior to the 1933 amendment of the former.
In Delaware River Q. & C. Co. v. Board of Chosen Freeholders of Mercer County, 88 N.J. Eq. 506 (Ch. 1918), Vice-Chancellor Backes held no lien could be asserted under the Municipal Lien Act by the owner of trucks who had rented them, with drivers, to the contractor. He said:
"The furnishing of instrumentalities to a contractor and used by him in the performance of a contract, does not constitute `labor' within the scope and purview of the statute. * * * Here the contractor did the work with claimant's trucks and drivers. The undertaking of [claimant] did not involve the performance of any part of the *434 municipal contract. It was in no sense a subcontractor. Its drivers, like the trucks, were instrumentalities furnished to the contractor. There is a marked distinction between a charge for rental of instrumentalities used by the contractor, and a claim for labor performed by the lienor by means of instrumentalities. In the latter instance, * * * the claimant `is entitled to a lien for the value of the labor so performed, and this value is merely increased by the instrumentalities used in this labor.' The nature of the engagement is the controlling element." (at p. 508)
See also West Jersey & S.S.R.R. Co. v. Cape May County, 105 N.J. Eq. 457 (Ch. 1929), wherein a lien for a claim for rental of a hawser on a barge was not sustained. This decision was followed by the Court of Errors and Appeals in Cramer v. Board of Chosen Freeholders of Salem County, 147 A. 639 (E. & A. 1929) (not officially reported).
Fourteen years after his Delaware River opinion, Vice-Chancellor Backes adhered to his distinction between instrumentalities per se and instrumentalities qua labor. Jankowitz v. Morristown, supra (111 N.J. Eq. 201), which arose under the "labor and materials" formulation of the original Municipal Mechanics' Lien Law. Among the claimants in Jankowitz was one Thorne, who owned a bulldozer. The court said:
"Thorne personally manned the machine and did the work. The compensation was $30 a shift of ten hours. He performed labor; the bulldozer was a means. He is entitled to a lien. At times when Thorne was through working, the contractor's employees used the bulldozer. There is no lien for the use." (at p. 203)
Stein v. J.T. Stout Co., 9 N.J. Misc. 685, 155 A. 457 (Sup. Ct. 1931), made a comparable construction of the Bond Act, a statute adopted originally as L. 1918, c. 75, to compel contractors on public works to procure bonds guaranteeing payment of claims arising because of "labor performed or materials furnished." The Stein case, citing the Delaware River case, supra, ruled:
"[A]ccording to judicial interpretation, the rental of an instrumentality, such as the hire of a truck to be operated by the subcontractor, is not within [the statute's] intent or meaning as labor or material * * *." 9 N.J. Misc., at p. 686.
*435 Stein distinguished the earlier case of Hammill v. Commercial Casualty Ins. Co., 5 N.J. Misc. 685, 137 A. 884 (Sup. Ct. 1927), on the ground it had involved a contract for transportation, a lienable item (see Davis v. Mial, supra), rather than mere vehicle rental.
Both the Municipal Lien Law and the Bond Act were expanded in scope by amendments. By L. 1933, c. 227, the former was extended to "any materials, including the furnishing of oil, gasoline or lubricants and vehicle use toward the performance," etc. By L. 1932, c. 142, the Bond Act was amended to cover "provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction," etc. The latter amendment was held effective to protect one who rented a power shovel to a subcontractor. Leonard D. Sylvester, Inc. v. Giovannone, &c., Co., 116 N.J. Eq. 515 (Ch. 1934).
The Trust Fund Act, adopted as L. 1932, c. 268, constitutes money paid to a contractor on a public job a trust fund in his hands to assure payment of "all claims for labor, materials and other charges incurred in connection with the performance of said contract * * *." Its purpose was to protect sureties on bonds furnished under the Bond Act from diversion by general contractors of payments received from public work to obligations owing by them for projects other than that for which they had been paid. See Key Agency v. Continental Cas. Co., 31 N.J. 98, 108-109 (1959).
For present purposes, it is significant that comparatively recent decisions have given the Municipal Mechanics' Lien Law, the Bond Act and the Trust Fund Act rather restrictive construction, the three acts being taken as in pari materia, and differences or similarities therein being given close attention in construing the extent of coverage. Wilson v. Robert A. Stretch, Inc., 44 N.J. Super. 52 (Ch. Div. 1957), held the rental (without driver) of a front-end loader to a subcontractor not to be within the coverage of the Municipal Lien Act provision for use of "vehicles," relying in part upon the contrastive broader reference in the Bond Act to "other *436 supplies, teams, * * * implements or machinery used * * *." Judge (now Mr. Justice) Haneman in Wilson described the Municipal, Bond and Trust Fund acts as progressively more liberal in their intended scope of coverage (id., at pp. 58-59). In Key Agency v. Continental Cas. Co., supra, however, the Trust Fund Act language, "labor, materials and other charges," was held not to comprehend more than the Bond Act, and therefore not to include premiums for workmen's compensation and public liabiity insurance.
In the face of the absence from the Mechanics' Lien Law of any coverage of vehicle use, as in the Municipal Lien Act, or of implements or machinery used, as in the Bond Act, and having in mind the closely restrictive construction of both those acts in their original form to exclude coverage of charges for use of equipment of any kind not inclusive of the labor for operation thereof, we cannot but conclude that the general Mechanics' Lien Act, heretofore regarded by our courts as more restricted in coverage than the other statutes mentioned, cannot be construed to allow a lien for the mere rental charge of equipment used in the erection of a building. See, generally to the same effect: Lembke Construction Co. v. J.D. Coggins Company, 72 N.M. 259, 382 P.2d 983 (Sup. Ct. 1963); Potter Mfg. Co. v. A.B. Meyer & Co., 171 Ind. 513, 86 N.E. 837 (Sup. Ct. 1909); cf. Timber Structures v. C.W.S. Grinding & Machine Wks., 191 Or. 231, 229 P.2d 623, 25 A.L.R.2d 1358 (Sup. Ct. 1951); Mann v. Schnarr, 228 Ind. 654, 95 N.E.2d 138 (Sup. Ct. 1950).
Plaintiff's charge being for a service which was not lienable, we hold it likewise not sustainable as the basis for a stop notice claim for all the reasons stated.
Judgment affirmed.