THE GARDNER & MEEKS COMPANY, DEFENDANT IN ERROR, v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 16th, 1905—Decided November 20th, 1905.

1. Under the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 538, § 1), where the building contract is not filed, a lien may be claimed for materials furnished to a subcontractor to enable him to carry out his part in the construction of a building pursuant to the owner's contract with the principal contractor.
2. The Mechanics' Lien law is not unconstitutional as depriving the owner of his property without due process of law, nor as interfering with his right to acquire, possess and protect property.

On error to the Hudson County Circuit Court.

For the plaintiff in error, *Edmund W. Wakelee* and *Vredenburgh, Wall & Van Winkle.*

For the defendant in error, *Charles E. Hendrickson, Jr.*

The opinion of the court was delivered by

PITNEY, J.   This is an action upon a mechanics' lien claim brought by the Gardner & Meeks Company (plaintiff below) against the Chert Stone Company, as builder, and the New York Central and Hudson River Railroad Company, as owner. The latter company alone made defence, and the only controversy raised was under its statutory plea that the building and lands in question were not liable to the builder's debt.

Upon the trial in the Circuit Court it appeared that the railroad company had made a written contract with one Crowe for erecting the building in question and furnishing the materials therefor. This contract was not filed until after the materials in question in this suit were furnished. Crowe made a subcontract with the Chert Stone Company for the execution of a part of his contract with the railroad company,

including the furnishing of materials. The Stone company, in undertaking to perform the subcontract, purchased of the plaintiff the materials upon which its mechanics' lien claim is based.

The sole ground of defence was that a mechanics' lien cannot be claimed in favor of a person supplying materials to a subcontractor, but that the right of lien, under the first section of the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 538), is restricted to the principal contractor and to those who do work for him and furnish materials directly to him.

The language of the section is broad. It declares that every building shall be liable for the payment of any debt contracted and owing to any person for labor performed or materials furnished for the erection and construction thereof, which debt shall be a lien on such building, &c. In *Van Pelt* v. *Hartough,* 2 *Vroom* 332, Chief Justice Beasley declared: "This provision is so comprehensive that if it had been left unconfined by subsequent restrictions a lien would have been given to all persons who under any circumstances whatever performed any labor in the erection of a building, or whose materials entered into its structure." In *Murphey-Hardy Lumber Co.* v. *Nicholas,* 37 *Id.* 414 (at *p.* 417), Justice Collins said: "The normal effect of this legislation is to subject lands upon which a building is erected, by authority of the owner, to a lien in favor of anyone who furnishes labor or materials therefor. To limit this effect strict compliance with the proviso of the second section of the act is essential." In *Coddington* v. *Dry Dock Co.,* 2 *Id.* 477 (at *p.* 482), Justice Vredenburgh, speaking for this court, put the rationale of the mechanics' lien upon its fundamental basis, viz.: "To hold a lien on the estate of the owner of the building in the land, on account of the increased value given by the building to the land, and the natural injustice there is in the owner of the land appropriating to his use, without compensation, the toil and capital of others." It is true that under the language of the first section of our Mechanics' Lien law it has been held that if materials are furnished for the erection of a building the mere fact that they are not used in the building

does not defeat the lien thereon. *Morris County Bank* v. *Rockaway Manufacturing Co.,* 1 *McCart.* 189; cited with approval in *Campbell* v. *Taylor Manufacturing Co.,* 19 *Dick. Ch. Rep.* 344. But this does not at all impair the force of the view declared by Justice Vredenburgh.

The argument for the plaintiff in error lays especial stress upon the words "contracted and owing" in the first section of the act. It is insisted that this expression limits the benefit of the first section to those whose debts are contracted by one who has authority to contract such indebtedness. While it is conceded that the master builder may subject the building to a lien for a debt contracted by him, it is insisted that his subcontractor cannot do the like. This argument proves too much, for if the force of the first section is to limit the lien to debts contracted by persons who, in the absence of the statute, would have authority to bind the land, it would debar all claims saving such as were contracted by the owner himself. It is manifest that the legislature had no such intent, for section 2, by limiting the lien to the contractor alone, where the contract is in writing and properly placed on file, distinctly recognizes that in the absence of that formality there may be a lien, by virtue of section 1, in favor of parties not standing in privity of contract with the owner. Section 16, which prescribes the form of the lien claim, plainly recognizes that the party contracting the debt may be some other person than the owner of the land or his immediate contractor, for it not only requires a separate statement of the name of the owner and the name of the "builder," but it defines the latter term as meaning not necessarily the person employed by the owner to construct the building, but "the person who contracted the debt, or for whom or at whose request the labor was performed or the materials furnished." And section 23 provides for combining a personal action for the recovery of the debt with an action *quasi in rem* for the enforcement of the lien, prescribing that the process shall be against the builder and the owner; or, if the owner contracted the debt, then against him as both builder and owner.

In short, as we construe the act, section 1 gives a lien to any person who performs labor or furnishes materials for the erection and construction of the building, irrespective of privity of contract with the owner or with the owner's contractor. This does not mean, of course, that there may be a lien for work performed or materials furnished by a mere volunteer or meddler, acting without authority derived directly or indirectly from the owner. No such question is raised in this case. The materials were furnished to a subcontractor to enable him to carry out his part in the construction of the building pursuant to the owner's contract with the principal contractor. If the owner desires to protect his land against liens thus incurred in favor of any and all persons other than the party with whom he contracts, his proper course is to adopt the simple method pointed out in section 2, which limits the lien upon the land to the contractor himself, where the contract is duly placed on file. And section 3 gives the substituted remedy of a lien upon the fund payable by the owner to his contractor in favor of parties debarred from a lien on the land by the filing of the contract, so far as they come within the class described in section 3.

It has been held by this court, in *Carlisle* v. *Knapp,* 22 *Vroom* 329, that the remedy by stop-notice, prescribed by section 3, does not extend to one who has furnished materials to a subcontractor. But this is on the ground that this section gives the right to demand payment from the owner only when his contractor is in default of paying that which he owes to the claimant, and where there is no privity between the claimant and the contractor there is no right in the claimant to demand payment from the contractor.

It is argued that the legislature itself has construed the meaning of section 1 by the passage of the acts (*Pamph. L.* 1890, *p.* 479; *Pamph. L.* 1892, *p.* 358; repealed, *Pamph. L.* 1895, *pp.* 313, 317) by which it was provided that the exemption of the building from liens to others than the contractor, where the contract was in writing and filed, should be conditioned upon the production by the contractor to the owner of a release of mechanics' liens signed by all persons who

might have furnished materials used in the erection of the building, and by all journeymen employed in the erection and construction thereof. We see no force in this argument. The acts of 1890 and 1892 were an attempt to extend the benefits and diminish the hardships of the act by a special method of procedure in a case where the contract was in writing and placed on file, and they have no particular bearing upon the remedy afforded to materialmen and others by lien upon the building where the contract is not filed.

Finally, it is argued that if the first section of the Mechanics' Lien law be so construed as to allow a lien for a debt due to any person further removed from the owner than the first subcontractor it renders the act unconstitutional as depriving the owner of his property without due process of law and interfering with his liberty of acquiring, possessing and protecting property. The owner's right to hold and enjoy property must be subject to the general law of the state. He has no natural right to improve it by the construction of a building thereon without compensation to those who perform the labor and furnish the materials that enter into the improvement. And where the general law prescribes formalities whereby such laborers and materialmen may recover their compensation by means of a lien upon the property, unless the owner pursues the method that the statute prescribes for limiting the right of such lien to the party with whom he contracts, the presumption arises that his building operation is undertaken in full view of the general law, and the law enters into and becomes a part of his contract by his own consent. It has been repeatedly held that such a statute is not an undue restraint upon the owner's liberty of contract considered as an incident to the right of acquiring, possessing and protecting property, and does not deprive him of his property without due process of law. *Jones* v. *Great Southern Fireproof Hotel Co.,* 86 *Fed. Rep.* 370, and cases cited; *Great Southern Fireproof Hotel Co.* v. *Jones,* 116 *Id.* 793; *Smith* v. *Newbaur,* 144 *Ind.* 95; *Henry & Cotesworth Co.* v. *Evans,* 97 *Mo.* 47; *Blauvelt* v. *Woodworth,* 31 *N. Y.* 285; *Glacius* v. *Black,* 67 *N. Y.* 563.

Nor is there greater force in the insistment that under exceptional circumstances the land may be subjected to mechanics' liens in favor of two or more parties for the furnishing of materials that should create but a single debt. Aside from the easy protection afforded to the owner by section 2 of the act, its twenty-ninth section provides for a distribution of the proceeds of the sale of lands among the several lien claimants; and either under this section or by appropriate proceedings in equity, by bill of interpleader or otherwise, the owner has ample protection against being obliged to pay any claimant other than him at whose actual cost the materials were supplied.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 13.

*For reversal*—None.