MORRIS COUNTY INDUSTRIAL PARK, A NEW JERSEY COR-
PORATION, PLAINTIFF-APPELLANT, v. THOMAS NICOL
CO., A NEW JERSEY CORPORATION, NEW JERSEY
TURNPIKE AUTHORITY, A BODY CORPORATE AND
POLITIC, STANDARD ACCIDENT INSURANCE COM-
PANY, A CORPORATION OF THE STATE OF MICHIGAN,
DEFENDANTS-RESPONDENTS AND L. G. KITCHELL,
INC., A NEW JERSEY CORPORATION, DEFENDANT.

Argued May 22, 1961—Decided July 28, 1961.

Mr. *David Pressler* argued the cause for appellant (*Messrs. Okin and Pressler*, attorneys; *Miss Sylvia B. Pressler*, on the brief).

Mr. *Donald J. Cunningham* argued the cause for respondents (*Mr. Vincent P. Keuper*, attorney; *Mr. Cunningham*, on the brief).

The opinion of the court was delivered by

HALL, J. This case involves a problem of the extent of protection given a materialman by the municipal mechanics' lien law, *N. J. S.* 2A:44–125, *et seq.*, and the bond act, *N. J. S.* 2A:44–143, *et seq.*

Plaintiff supplied dirt from its pit to defendant L. G. Kitchell, Inc., which had a contract with defendant Thomas Nicol Co. to furnish fill needed in Nicol's work as general contractor on a public construction project of defendant New Jersey Turnpike Authority. There was no contractual relationship between plaintiff and Nicol. Defendant Standard Accident Insurance Company was the surety on the performance bond Nicol was required to furnish the Authority pursuant to the bond act.

The dirt was delivered at the job site in trucks of Kitchell and of a hauler hired by plaintiff at Kitchell's request. It was dumped at locations designated by Nicol's employees and was actually used in the project. Plaintiff charged Kitchell one price for dirt hauled by the latter and a much higher figure for the dirt delivered by the trucks plaintiff hired. Nicol paid Kitchell's bill for the fill by a check drawn to the order of Kitchell individually, on the representation that his one-man corporation was no longer in existence. (This fact has no bearing on the issues before us.) Kitchell then absconded and plaintiff has never been paid its bill of some $2,485 for the dirt it supplied.

Plaintiff asserted a lien under the municipal mechanics' lien law against moneys in the hands of the Authority due Nicol under the general contract. Alternatively, it made a claim against Nicol's surety under the additional obligation of the performance bond imposed by the bond act to assure the payment of subcontractors and materialmen. The instant suit was brought in the Chancery Division to enforce the claims and also to obtain a judgment against Kitchell. The latter defaulted and judgment was entered accordingly. There is no doubt that, procedurally, plaintiff perfected the claims under both statutes in timely and proper fashion and if it were successful under either theory, the burden of double payment would ultimately fall on Nicol, a solvent entity.

The trial court decided that plaintiff was not entitled to recover either on the asserted lien or the bond obligation, finding as a fact that Kitchell was not a subcontractor of Nicol, but a materialman, that plaintiff was therefore a materialman who had supplied another materialman, and that as matter of law neither statute extended benefit in that situation. 64 *N. J. Super.* 381 (1960). These holdings present the main issues on plaintiff's appeal, certified on our motion while pending in the Appellate Division.

A preliminary matter is asserted by respondents in support of the judgment below. They urge that the Turn-

pike Authority is not intended to be included within the governmental units or agencies specified in either the lien law or the bond act and that consequently the benefits of neither statute are available where a construction project of the Authority is involved. Essentially the same contention was made by a pretrial motion to the trial court and rejected.

This initial question brings to the fore the underlying standard to be applied in construing the two statutes, which is also pertinent in considering the main issues of the appeal. This court has voiced the frequently stated principle that, in general, all mechanics' lien laws, being of statutory origin and in derogation of the common law, should be strictly construed with respect to the provisions giving rise to the lien, but liberally construed as to provisions for enforcement. *Friedman v. Stein*, 4 *N. J.* 34, 40 (1950). See, especially concerning municipal mechanics' liens, *Fidelity and Deposit Company of Maryland v. McClintic-Marshall Corporation*, 115 *N. J. Eq.* 470, 473–474 (*Ch.* 1934), affirmed o. b. 117 *N. J. Eq.* 440 (*E. & A.* 1935); *Wilson v. Robert A. Stretch, Inc.*, 44 *N. J. Super.* 52 (*Ch. Div.* 1957). This is really saying no more than that where a statute imposes a non-contractual obligation or charge, and one which may result in one party, or his property in the case of a private building project, having to satisfy the debt of another party, a court should not extend the substantive benefit thereby given beyond the fair intent and purpose of the legislation, to be discerned primarily from the language of the statute itself and related enactments. See *Arrow Builders Supply Corp. v. Hudson Terrace Apartments, Inc.*, 15 *N. J.* 418, 421 (1954), petition for rehearing denied 16 *N. J.* 47 (1954). The same criterion should ground the interpretation of the bond act which, though differing in some aspects from the municipal lien law as will be pointed out, essentially simply affords a further remedy in basically the same situation. The two statutes are *in pari materia*

and are to be construed together. *Key Agency v. Continental Casualty Co.*, 31 *N. J.* 98, 104 (1959).

The lien law provides in *N. J. S.* 2A:44–128:

"Any person who, as laborer, mechanic, materialman, merchant or trader, or subcontractor, in pursuance of or conformity with the terms of any contract for any public improvement made between any person and a *public agency* as defined in section 2A:44–126 of this title and authorized by law to make contracts for the making of public improvements, performs any labor or furnishes any materials, including the furnishing of oil, gasoline or lubricants and vehicle use, toward the performance or completion of any such contract, shall, on complying with the provisions of sections 2A:44–132 and 2A:44–133 of this title, have a lien for the value of the labor or materials, or both, upon the moneys due or to grow under the contract and in the control of the public agency, to the full value of the claim or demand." (Emphasis added)

"Public agency" is defined by *N. J. S.* 2A:44–126 as:

"*any county, city, town, township, public commission, public board or other municipality* in this state authorized by law to make contracts for the making of any public improvement in any city, town, township or other municipality." (Emphasis added)

The bond act, by *N. J. S.* 2A:44–143, says:

"When public buildings or other public works or improvements are about to be constructed, erected, altered or repaired under contract, at the expense *of the state or any county, municipality or school district thereof,* the board, officer or agent contracting on behalf of the state, county, municipality or school district, shall require the usual bond, as provided for by law, with good and sufficient sureties, with an additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction, erection, alteration or repair of such buildings, works or improvements." (Emphasis added)

We are convinced that the Turnpike Authority is encompassed by the bond act. The language appears intended to include all governmental units, beginning with the State itself, even though enacted, as was also the lien law, before the advent of autonomous agencies such as the Authority.

The statute has long been applied to the projects of various state agencies. *First-Mechanics' National Bank of Trenton v. New Jersey Brick & Supply Co.,* 112 *N. J. L.* 218 (*Sup. Ct.* 1934) (State House Commission); *Leonard D. Sylvester, Inc. v. Giovannone Construction Co.,* 116 *N. J. Eq.* 515 (*Ch.* 1934) (State Highway Department); *Monahan v. Seaboard Surety Co.,* 126 *N. J. L.* 148 (*E. & A.* 1941) (State Department of Institutions and Agencies); *McCann v. Miller,* 134 *N. J. L.* 457 (*Sup. Ct.* 1946) (State Highway Commission). The Authority should certainly be held to be a state agency for this purpose. *N. J. S. A.* 27:23-1, 2 and 3. Cf. *City of Newark v. New Jersey Turnpike Authority,* 7 *N. J.* 377 (1951), appeal dismissed 342 *U. S.* 874, 72 *S. Ct.* 168, 96 *L. Ed.* 657 (1951); *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235 (1949).

There is considerable doubt though whether an independent agency like the Authority comes within the more limited language of *N. J. S.* 2A:44-126 of the lien law defining "public agencies." The State and its agencies are not included and the definition has been said to be limited to counties and conventional municipal corporations. *Curtis & Hill Gravel and Sand Company v. State Highway Commission,* 91 *N. J. Eq.* 421 (*Ch.* 1920). It is not necessary that we decide the point, however, because we believe that, substantively and quite apart from this preliminary matter, plaintiff is not entitled to recover under either statute.

Elucidation of our conclusion is found in discussion of the principal issues. Plaintiff first urges, very broadly, that both statutes include within their protection any claimant who furnishes materials or labor actually used in the completion of the public work, even where such materials are supplied to another materialman and to one far removed from privity of contract with the general contractor or a subcontractor. The parties agree that both acts are unquestionably applicable by their terms where materials are furnished directly to the general contractor or to one of his subcontractors.

Pertinent statutory language, in addition to that previously quoted, should be noted. *N. J. S.* 2A:44–128 of the lien law goes on to say:

"The lien may be filed and, to the extent of the amount due or to grow due under the contract, shall become an absolute lien to the full value of the labor performed or materials furnished in favor of every person and his representatives and assigns employed by or *furnishing materials to the contractor or subcontractor.*" (Emphasis added)

In the notice of claim required to be filed, *N. J. S.* 2A:44–133 specifies that the name of the person to whom the materials were furnished shall be stated "and *whether he is the contractor with the public agency or a subcontractor.*" (Emphasis added) And by *N. J. S.* 2A:44–140, in a suit on a lien claim the court, determining the validity and priority of liens and the amounts due, is directed to charge the claims of subcontractors "with the amounts paid *to the claimants* under them for labor performed and *materials furnished in the execution of the subcontract.*" (Emphasis added)

All this language in the lien law evidences to us without question that the Legislature has limited a right of lien to a materialman supplying either the general contractor or a subcontractor. The words are clear and express and our attention has not been called to any decision anywhere to support plaintiff's broader view.

To turn to the bond act, somewhat different language is used, but we feel constrained to say that it has to be similarly limited. *Section* 143, previously quoted in full (*N. J. S.* 2A:44–143), in defining the additional obligation required to be contained in the performance bond, specifies that it shall be "for the *payment by the contractor, and by all subcontractors,* for all * * * materials * * * used or consumed in, upon, for or about the construction * * *." The following section, *N. J. S.* 2A:44–144, prescribes the condition of this obligation of the bond in the

same language, but including as well subcontractors of subcontractors. The precise form of the bond, set out in *N. J. S.* 2A:44–147, though couched in somewhat different phraseology, must be read in the light of the foundation provisions of the preceding sections just cited.

There are some instances where the bond act gives protection and the lien law would not. For example, the latter is not available where the project is by the State itself, as has been noted. The bond act permits a claim against the surety for a period of up to 80 days after the acceptance of the improvement, *N. J. S.* 2A:44–145, while the lien law benefit is limited to a claimant who files a notice of lien within 60 days following acceptance. And there may be other situations. *Cf. Wilson v. Robert A. Stretch, Inc., supra* (44 *N. J. Super.* 52). But we feel there is not sufficient legislative indication of intended difference between the two acts with respect to the issue before us.

This conclusion is in accord with the rationale of the only previous case under the bond act in this State where the matter seems to have been at all in the mind of the court. *Leonard D. Sylvester, Inc. v. Giovannone Construction Co., supra* (116 *N. J. Eq.,* at *pp.* 518–519). *First-Mechanics' National Bank of Trenton v. New Jersey Brick and Supply Co., supra* (112 *N. J. L.* 218) contains some broad language, but it does not clearly appear that the question before us was specifically involved and this expression of the intermediate appellate court upon which plaintiff relies must be considered inadvertent *dictum.* It is also inconsistent with other language in the opinion. Too, it appears from later related litigation that the party through whom the materialman claimed was regarded as a subcontractor and not a materialman. *Karno-Smith Co. v. Maloney,* 112 *F.* 2d 690, 692 (3 *Cir.* 1940). Similar broad language in *Graybar Electric Co. v. Continental Casualty Co.,* 50 *N. J. Super.* 289, 297–298 (*App. Div.* 1958) and some of the cases therein cited must also be read in the light of the fact that those courts were concerned only with claims

of subcontractors or suppliers of material to the public contractor or one of his subcontractors.

The view we have espoused also follows the course of authority in other jurisdictions which have considered the question either with relation to a municipal lien law or a statutory bond. The general rule where a mechanics' lien of any kind is concerned is summarized in 36 *Am. Jur., Mechanics' Liens,* § 52, *p.* 47:

> "Persons supplying materials to a materialman or a subcontractor must come clearly within the terms of the statute, or they can claim no lien. They are so far removed from the owner that the privilege of a lien is not often extended to them, and the plainest expressions of law must be used to entitle them to this remedy."

To the same effect is 57 *C. J. S. Mechanics' Liens* § 103, *p.* 610. The same approach has been taken with respect to benefits under a performance bond. 63 *C. J. S. Municipal Corporations* § 1178, *p.* 869. Most of the cases holding that a materialman of a materialman is not covered are set forth under our discussion, to follow, of whether Kitchell can be considered to be a subcontractor. Additional precise authority will be mentioned at this point.

The comparable federal statute (Miller Act, 40 *U. S. C. A.* § 270 a(a)(2)) requires a payment bond on federal construction contracts "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." The following section of the act (§270 b(a)) contains language, analogous to that in *N. J. S.* 2A:44–143 and 144, indicating an intent to limit benefits to materialmen of subcontractors. The United States Supreme Court expressly held that the statute did not protect a materialman of a materialman. *MacEvoy v. United States,* 322 *U. S.* 102, 64 *S. Ct.* 890, 88 *L. Ed.* 1163 (1944). An example of a state court holding similarly is *J. Watts Kearny & Sons v. Perry,* 174 *La.* 411, 141 *So.* 13 (*Sup. Ct.* 1932). Also *cf. Staffon v. Lyon,* 104 *Mich.* 249, 62 *N. W.* 354 (*Sup. Ct.*

1895). The only jurisdiction reaching a contrary result which research has disclosed is Ohio. In *J. T. Weybrecht's Sons Co. v. Hartford Accident & Indemnity Co.*, 161 *Ohio St.* 436, 119 *N. E. 2d* 836 (*Sup. Ct.* 1954), its Supreme Court held that one who merely supplies materials is included in the ordinary meaning of the term "subcontractor" intended in its bond act, but would not be under the technical definition thereof expressed in the lien law. It was strongly indicated, however, that the court might well have reached a different conclusion if the case were of first impression, but it felt bound by the precedent of a former decision upon which the building industry had relied.

While it may be suggested that the line we adhere to is an artificial one in extending the benefit of the bond only to materialmen having contractual relationship with the general contractor or one of his subcontractors and not to a supplier of a materialman who is in turn in privity with the prime contractor, the matter is one for legislative judgment and any intent to cover such a supplier should be clearly made known through appropriate statutory language.

Reason for the legislative limitation is, moreover, found in considerations of practical business sense and fairness to the general contractor. The language of the United States Supreme Court in *MacEvoy*, 64 *S. Ct.*, at *p.* 895, 88 *L. Ed.*, at *p.* 1169, aptly expresses it:

"Practical considerations underlying the Act likewise support this conclusion. Congress cannot be presumed, in the absence of express statutory language, to have intended to impose liability on the payment bond in situations where it is difficult or impossible for the prime contractor to protect himself. The relatively few subcontractors who perform part of the original contract represent in a sense the prime contractor and are well known to him. It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors. *United States use of Hill v. American Surety Co. supra* (200 *U. S.* [197] 204, 50 *L. Ed.* 441, 26 *S. Ct.* 168) ; *Mankin v. United States for Use of Ludowici-Celadon Co., supra* (215 *U. S.* [533] 540, 30 *S. Ct.* [174] 177, 54 *L. Ed.* 315. But this method of protection is gen-

erally inadequate to cope with remote and underminable liabilities incurred by an ordinary materialman, who may be a manufacturer, a wholesaler or a retailer. Many such materialmen are usually involved in large projects; they deal in turn with innumerable sub-materialmen and laborers. To impose unlimited liability under the payment bond to those sub-materialmen and laborers is to create a precarious and perilous risk on the prime contractor and his surety. To sanction such a risk requires clear language in the statute and in the bond so as to leave no alternative. * * *"

It must also be remembered, in this regard, that the bond required of the general contractor can in no sense be considered insurance by which the entire building industry shares the risk equally. The general contractor at all times bears the primary and full responsibility for the financial soundness of his subcontractors. See Cushman, "Surety Bonds on Public and Private Construction Projects," 46 A. B. A. J. 649, 652–653 (1960).

The second theory advanced by plaintiff is that, even if the statutes do not extend benefits to the materialman of another materialman, Kitchell was in law a subcontractor of Nicol rather than simply a materialman and therefore plaintiff was entitled to protection as a materialman of a subcontractor. We cannot agree. The trial court was clearly right in finding Kitchell was not a subcontractor.

Our mechanics' lien statutes, both public and private, clearly indicate that contractors, subcontractors and materialmen are distinct and exclusive classes. As to the private law, see e. g., N. J. S. 2A:44–77 and 78. The municipal law, N. J. S. 2A:44–126, expressly defines a subcontractor as

"* * * a person having a contract under a contractor for the performance of the same *work*, or any specified part thereof, and also a person having such a contract with a subcontractor * * *." (Emphasis added)

The term is thus defined in its technical and precise sense as established by usage in the building trades, 17 C. J. S. Contracts § 11, and not in a broad or loose context. While there is no definition set forth in the later enacted bond act

(See *Key Agency v. Continental Casualty Co., supra* (31 *N. J.,* at *pp.* 106–107)), the same nomenclature is used and there is no reason to think an identical definition was not intended. *Cf. Brygidyr v. Rieman,* 31 *N. J. Super.* 450, 454 (*App. Div.* 1954). The emphasis is, of course, on the sub-contractor being engaged to do all or some part of the *work, i. e.,* the construction itself, involving at least some labor in the installation of materials and not merely the supplying of materials.

Since plaintiff contended below that Kitchell was actually a subcontractor, we are entitled to assume that it introduced all possible evidence supporting its contention. At the very most the testimony goes no further than to establish that Kitchell was engaged to, and did, supply fill dirt and deliver it at the spot along the highway construction where Nicol wished and ordered it dumped. There is no evidence that Kitchell processed the dirt in any manner either before or after it was delivered at the site or that it had anything to do with any further moving or grading thereof after the dumping from the trucks. The mere fact that Kitchell was charged more per yard by plaintiff for dirt delivered by the latter's vehicles at the site than for that which Kitchell itself trucked from the pit has no bearing. The higher price represented only an additional charge for plaintiff's delivery service, which must be considered as merely an incident of the sale.

So far as we have been able to determine, this question has not previously been passed upon in this State. But the authorities elsewhere are practically unanimous in holding that in such situations under analogous statutes, some identical to the case at bar, the supplier (Kitchell) is a material-man and have denied lien or bond coverage to one who, like the plaintiff here, in turn supplies or services him. *Forsberg v. Koss Construction Co.,* 218 *Iowa* 818, 252 *N. W.* 258 (*Sup. Ct.* 1934) (gravel delivered to "set ups"); *J. Watts Kearny & Sons v. Perry, supra* (141 *So.* 13) (gravel delivered at various locations of work site); *Webb v. Blue*

*Lightning Service Co.*, 237 *Miss.* 862, 116 *So.* 2d 753 (*Miss. Sup. Ct.* 1960) (gravel delivered at the pits); *Huddleston v. Nislar,* 72 *S. W.* 2d 959 (*Tex. Civ. App.* 1934) (improved rock delivered to work site); *Baker v. Yakima Valley Canal Co.,* 77 *Wash.* 70, 137 *P.* 342 (*Sup. Ct.* 1913) (gravel loaded but not delivered); *Neary v. Puget Sound Engineering Co.,* 114 *Wash.* 1, 194 *P.* 830 (*Sup. Ct.* 1921) (sand and gravel delivered at work site); *Marsh v. Rothey,* 117 *W. Va.* 94, 183 *S. E.* 914 (*Sup. Ct. App.* 1936) (crushed stone delivered); *Northwest Roads Co. v. Clyde Equipment Co.,* 79 *F.* 2d 771 (9 *Cir.* 1935) (crushed stone supplied); *Tipton Realty & Abstract Co. v. Kokomo Stone Co.,* 61 *Ind. App.* 681, 110 *N. E.* 688 (*App. Ct.* 1915) (gravel supplied). See also, *Indiana Limestone Co. v. Cuthbert,* 126 *Kan.* 262, 267 *P.* 983 (*Sup. Ct.* 1928) (cut stone delivered at work site); *Foster Lumber Co. v. Sigma Chi Chapter House of DePauw University,* 49 *Ind. App.* 528, 97 *N. E.* 801 (*App. Ct.* 1912) (cut stone delivered at construction); *Staffon v. Lyon, supra* (62 *N. W.* 354) (brick delivered to work site); Annotation, "Mechanic's Lien—Who Is a Materialman," 141 *A. L. R.* 321 (1942). We are not here concerned with the possibility of classifying as a subcontractor a supplier who does some processing or fabrication of the materials off the work site prior to delivery. See *Theisen v. County of Los Angeles,* 54 *Cal.* 2d 170, 5 *Cal. Rptr.* 161, 352 *P.* 2d 529 (*Sup. Ct.* 1960).

The only authority cited by plaintiff or which we have found in any way supporting its position on this aspect are two related Oklahoma cases, *Standard Accident Insurance Co. v. Basolo,* 180 *Okl.* 261, 68 *P.* 2d 804, 806 (*Sup. Ct.* 1937); *Standard Accident Insurance Co. v. Deep Rock Oil Corp.,* 180 *Okl.* 260, 68 *P.* 2d 808 (*Sup. Ct.* 1937), and they are clearly distinguishable by reason of the provisions of the statute in that state. There the general contractor on a state highway project entered into an agreement with a supplier to furnish, wash and deliver sand to the job site. The supplier failed to pay his laborers or

the merchant of the fuel used in his operations and suits were brought by these unpaid creditors against the general contractor's surety. The court, by a closely divided vote, permitted recovery in each case. The Oklahoma bond act, contrary to New Jersey's, made no mention of subcontractors or materialmen, but specified broadly that the bond should be conditioned on the "contractor or contractors" paying "all indebtedness incurred for labor or material furnished in the construction." It was held that the breadth of the legislative language encompassed all materialmen and subcontractors, as well as the prime contractor, within the term "contractors," intended protection to be given to anyone who furnished labor or materials contributing to the work, and therefore the supplier of sand was a "contractor" and his laborers and fuel merchant were entitled to the benefit of the prime contractor's bond.

The judgment of the Chancery Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.