**DIAMOND INTERNATIONAL CORP.**

v.

**BRISTOL COUNTY BUILDERS CORP.**

**BRISTOL COUNTY BUILDERS CORP.**

v.

**INDUSTRIAL NATIONAL BANK OF RHODE ISLAND.**

**No. 81–103–Appeal.**

Supreme Court of Rhode Island.

Nov. 18, 1983.

Z. Hershel Smith, Providence, for plaintiff.

Donald J. Nasif, Thomas H. Rosenfield, Howard E. Walker, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

These consolidated civil actions were tried together before a justice of the Superior Court without the intervention of a jury. The trial resulted in a judgment in favor of Diamond International Corporation (Diamond) in the principal sum of $6,251.23. A counterclaim brought by Bristol County Builders Corp. (Builders) against Diamond was dismissed. Judgment was entered in favor of Industrial National Bank (bank) against Builders on the bank's counterclaim in the principal amount of $3,473.84. Judgment was entered for the bank in Builder's claim for damages against it. The bank was ordered to pay over to Diamond the sum of $4,000 that it had previously withheld for Diamond's benefit purportedly in accordance with G.L.1956 (1969 Reenactment) § 34–27.1–1, as assigned, P.L.1973, ch. 136, § 1. Builders appeals from the judgments denying its claim against the bank and awarding money damages to the bank as against Builders. Builders also appeals from the judgment in favor of Diamond. Builders's appeal is sustained in part and denied in part. The facts of the case are as follows.

Builders was incorporated for the purpose of building and selling dwelling houses. In

the spring of 1974 Builders was engaged in the construction of a house located in Attleboro, Massachusetts. Incident to this construction, Builders purchased certain materials from Diamond. The agreement of purchase did not require Diamond to do any work on the real estate but simply to provide the materials specified.

In July 1974, Builders entered into a construction-loan agreement with the bank for $28,000. Builders also executed a promissory note in this amount and secured said note by a mortgage on the Attleboro property. On or about November 13, 1974, Diamond mailed a letter to the bank purporting to claim a lien on Builders's mortgage proceeds pursuant to § 34–27.1–1. This letter had the effect of causing the bank to withhold the unadvanced balance of $4,000. As a result, Builders claims that it was unable to finish the construction of the house in Attleboro and consequently defaulted on its mortgage to the bank. After the default occurred on the bank's first mortgage, the second mortgagee offered to discharge the bank's mortgage for the outstanding principal of $24,000 plus interest to the date of the offer, January 8, 1975. The bank refused to discharge the mortgage unless there was payment of the additional $4,000 allegedly withheld as a result of Diamond's claimed lien. Ultimately the bank foreclosed the mortgage; the Attleboro property was sold at auction for $31,300. On March 28, 1977, the $4,000 that had been withheld was placed in an interest-bearing escrow account pending the disposition of the several actions. The first issue raised by Builders is the applicability of § 34–27.1–1 to Diamond's claim. It is undisputed that Diamond was a materialman. The statute in effect at the time of these transactions, P.L.1973, ch. 136, § 1, read in pertinent part as follows:[1]

"34–27.1–1. PAYMENT OF MORTGAGE PROCEEDS TO SUBCONTRACTORS.—In any construction mortgage loan, where the original face amount of

the loan is under $100,000.00, the mortgagee may pay all, or any portion of said mortgage loan to the owner, or lessee, as the case may be, at any time, except to the extent that a lien or notice thereof has been duly recorded or unless said mortgagee has received, either by personal delivery or by registered mail, a written statement, from the owner, lessee, contractor or subcontractor, sworn to be true, setting forth the name and address and the amount of the claim of any *subcontractor* who has not been paid and specifying the amount of the unpaid balance of his claim. To the extent that any claims of *subcontractors* are shown on said statement to be unpaid, the mortgagee shall, from any funds remaining in its hands, either (a) make checks payable to such owner or lessee, as the case may be, jointly with such *subcontractors* for the amount of his unpaid claim, and a check for any balance may be issued to the owner or lessee, or (b) withhold an amount equal to the total of the amounts shown by such statement to be unpaid.

"In the event that the mortgagee is notified in writing that there is a dispute as to the satisfactory performance of any *subcontractor,* then the amount due such *subcontractor* shall not be paid by the mortgagee until the question is resolved." (Emphasis added.)

It should be noted that the statute purports to cover claims by subcontractors and does not purport to cover claims by materialmen. Consequently, this statute would not be applicable to materialmen unless that class is comprehended and included within the term "subcontractor." A materialman is defined in Black's Law Dictionary 881 (5th ed. 1979) as

"A person who has furnished materials or supplies used in the construction or repair of a building, structure, etc."

to the present controversy.

---

1. This statute has been amended by P.L.1979, ch. 375, § 1. This amendment is not pertinent

The term "subcontractor" is defined in Black's Law Dictionary 1277 (5th ed. 1979) as

> "One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance."

The terms "materialmen" and "subcontractors" have been distinguished by the United States Supreme Court for purposes of application of the Miller Act relating to the effect of a payment bond. *Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 109–10, 64 S.Ct. 890, 895, 88 L.Ed. 1163, 1169 (1944). Similarly, the Supreme Court of New Jersey in *Morris County Industrial Park v. Thomas Nicol Co.,* 35 N.J. 522, 533, 173 A.2d 414, 420 (1961), suggested that "subcontractors and materialmen are distinct and exclusive classes." . The Rhode Island Legislature has distinguished materialmen from subcontractors in statutes relating to improvements to real property. *See, e.g.,* G.L.1956 (1969 Reenactment) § 9–1–29, as enacted by P.L.1975, ch. 119, § 34–28–1. *See also, Faraone v. Faraone,* R.I., 413 A.2d 90 (1980) (relating to the requirements of establishment of a mechanic's lien). These statutory references make it very plain that under circumstances when the Rhode Island Legislature has desired to create a remedy for materialmen, it has included them specifically in the terms of the statute. It is significant that no reference is made to materialmen in the statute under consideration here.

▇▇▇ We are of the opinion that the Legislature in enacting § 34–27.1–1 intended to provide a remedy for subcontractors but did not intend to extend that remedy to materialmen. In instances in which the Rhode Island Legislature has intended to provide a remedy or lien for materialmen, it has done so explicitly and unequivocally by using the term "materialmen" in the statute itself. No such intent is manifested here. Consequently, we conclude that § 34–27.1–1 was not applicable to Diamond because it is undisputed that Diamond was a furnisher of materials and not a subcontractor. Since we have found that the statute is not applicable to Diamond, it becomes unnecessary to consider the constitutionality of the statute or its relevance to a transaction in which the land securing the promissory note was located outside the territorial boundaries of this state.

▇▇▇ It is necessary, however, to determine whether the inapplicability of this statute created an obligation on the part of the bank to advance an additional sum of $4,000 to Builders. The trial justice found as a fact that under the terms of the loan agreement 15 percent of the amount of the loan ($4,200) was not required to be advanced until the construction of the improvements on the land was completed. The remaining 10 percent ($2,800) was not required to be advanced until sixty days after the completion of the work. The trial justice found that the work was never completed and therefore the obligation to advance the $4,000 in dispute did not arise. An examination of the record in the case indicates that there was uncontradicted evidence that Builders did not complete construction work on the mortgaged premises. The terms of the loan agreement were in accordance with the findings of the trial justice. As a result, we cannot say that the findings of fact on this issue were clearly wrong. The interpretation of the loan-agreement provisions was correct. Therefore, the bank was under no obligation to advance the final $4,000 of the loan to Builders.

▇▇▇ Nevertheless, although the bank was not obligated to advance the $4,000, it had no right to include that sum as having been dedicated under the statute to Diamond; therefore, an obligation of Builders to repay to the bank could not be based thereon. It is undisputed that the second mortgage had agreed with Builders to accept a conveyance of the Attleboro property in the event that the bank would accede to a payoff of $24,000 principal plus interest to the date of the offer. The offer was transmitted to the bank by a letter from Builders's attorney dated January 8, 1975. The bank responded

to the letter by demanding payment of $28,-000 plus interest, or a total sum of $29,-532.49. Since we have found that § 34–27.-1–1 was not applicable to Diamond, then it follows that the bank had no right to demand repayment of the $4,000 that it withheld for Diamond's benefit and had never advanced to Builders. Consequently, the bank acted wrongfully when it refused to accept a payoff figure of $24,000 plus interest, as transmitted by Builders. The finding of the trial justice that the bank was entitled to be repaid the principal sum of $28,000 was therefore erroneous. Thus, the foreclosure by the bank was wrongful, and it would not be entitled to the expenses incident to such foreclosure including counsel fees.

Further, Builders would be entitled to any damages that it might prove had been incurred as a proximate result of the foreclosure, although not as a result of the failure to advance the $4,000 as alleged in Builders's complaint.

The entry of judgment on behalf of Diamond in the sum of $6,251.23 plus interest and costs is supported by uncontradicted evidence that this indebtedness was incurred as a result of the furnishing of materials to the Attleboro construction project. The fact that the lien statute was inapplicable does not affect the obligation of Builders to pay its indebtedness. Consequently, the judgment of the Superior Court in this respect is affirmed.

Builders's counterclaim against Diamond was properly dismissed since there was no evidence of any duty owed by Diamond to Builders which was breached by Diamond's correspondence with the bank. Diamond was under no obligation to Builders to interpret its statutory rights correctly.

The judge's order requiring the bank to pay the sum of $4,000 to Diamond was based wholly on the applicability of § 34–27.1–1. Since we have found that statute to be inapplicable to Diamond, the bank is under no obligation to pay over this sum or any sum to Diamond, and this portion of the judgment is reversed.

For the reasons stated, the appeal of Builders is sustained in part and denied in part. The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.