WILLIAM G. BURRIS, JR. & SON, INC., T/A ENVIRONMENTAL SYSTEMS CONSULTANTS, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. HILTON HOTELS CORPORATION, A NEW JERSEY CORPORATION, ET ALS., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 30, 1986—Decided November 25, 1986.

Before Judges O'BRIEN, SKILLMAN and LANDAU.

*William G. Wright* argued the cause for appellant (*Farr, Wolf & Lyons*, attorneys; *William G. Wright*, of counsel; *Elizabeth J. Rosenthal*, on the brief).

*Howard E. Drucks* argued the cause for respondent (*McGahn, Friss & Miller*, attorneys; *Patrick T. McGahn*, Jr. and *Howard E. Drucks*, of counsel; *Patrick T. McGahn*, Jr., on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

At issue in this case is the right of a materialman for a materialman to obtain a mechanic's lien pursuant to *N.J.S.A.* 2A:44–64 *et seq.* The trial judge ruled that there was no such right. Under the circumstances of this case, we disagree and reverse.

Hilton New Jersey Corporation (Hilton) was the owner of the property on which the mechanic's lien is sought.[1] Hilton had awarded a contract for the plumbing work in the construction of a casino hotel on the property to a joint venture consisting of John F. Harkins Co., Inc. and Henkels & McCoy, Inc. (Harkins). In January 1984, Harkins placed an order with defendant corporation Clos-O-Mat (Clos-O-Mat) for 20 Clos-O-Mat toilet units. This order was placed through defendant Robert M. Gossweiler (Gossweiler), an officer of Clos-O-Mat. Fourteen of those Clos-O-Mat units were purchased by Clos-O-Mat and Gossweiler from plaintiff William G. Burris, Jr. & Son, Inc., trading as Environmental Systems Consultants (Burris).

On January 27, 1985, prior to delivery of the units, Burris filed a mechanic's notice of intention with the Atlantic County Clerk pursuant to *N.J.S.A.* 2A:44–71, a copy of which it served upon Hilton. All of the units were delivered to the job site on February 5 and February 6, 1985. Harkins signed receipts for

---

[1]Plaintiff's mechanic's notice of intention incorrectly listed the owner as Hilton Hotel Corporation.

the units which were installed in the casino hotel by employees of Harkins.

On May 2, 1985, Burris filed a mechanic's lien claim pursuant to *N.J.S.A.* 2A:44–91 and then instituted this suit pursuant to *N.J.S.A.* 2A:44–97. The amount stated in the lien claim was $29,750, representing a per-unit cost of $2,125, plus freight charges of $150 for a total of $29,900.

Harkins was paid by Hilton for all Clos-O-Mat units installed in the casino hotel and Harkins contends it paid Clos-O-Mat for all those units. This action was defended by Harkins as it agreed in its contract to indemnify Hilton against mechanics' liens. It is contended that Burris is a materialman for a materialman, and as such, is not entitled to obtain a lien under *N.J.S.A.* 2A:44–66 *et seq.* As noted, the trial judge agreed.

"Persons supplying to a materialman ... must come clearly within the terms of the statute, or they can claim no lien. They are so far removed from the owner that the privilege of a lien is not often extended to them, and the plainest expression of law must be used to entitle them to this remedy." 36 *Am.Jur. Mechanics' Liens,* § 52, *p.* 47. *Morris County Industrial Park v. Thomas Nicol Co.,* 35 *N.J.* 522, 531 (1961); *Chesebro-Whitman Co., Inc. v. Edenboro Apts., Inc.,* 86 *N.J.Super.* 422, 428 (App.Div.1965).

Mechanics' and materialmen's liens are exclusively statutory in origin and, being in derogation of the common law, the provisions of the statute giving rise to the lien are to be strictly construed. *Friedman v. Stein,* 4 *N.J.* 34, 40 (1950). However, the provisions for the enforcement of the lien thereby created are to be liberally construed to effectuate the remedial statutory policy of providing priority of payment of the price or value of work performed and materials furnished in the erection or reparation of a building or other structure. *Ibid.* Since we are called upon to interpret the provisions of *N.J.S.A.*

2A:44–66 which gives rise to the lien, we must strictly construe its provisions.

The pertinent language of *N.J.S.A.* 2A:44–66 provides:

Except as otherwise provided in this article, the property herein enumerated shall be liable for the payment of any debt contracted or owing to any person for any of the purposes herein specified, which debt shall be a lien upon such property; that is to say:

a. Every building, together with the land whereon it stands, including the lot or curtilage whereon the same is erected, for labor performed or materials furnished for the erection, construction or completion of such building, or any alteration or repair thereof or addition thereto;

Although both sides describe the issue presented as one of first impression, the statute in question was interpreted by our highest court in *Gardner & Meeks Co. v. New York Central & Hudson River R. Co.*, 72 *N.J.L.* 257 (E. & A. 1905). In that case, Gardner & Meeks Company sought a mechanic's lien against the property of New York Central & Hudson River Railroad Company as owner. The railroad company had made a written contract with one Crowe for the erection of a building and furnishing of materials therefor. The contract was not filed until after the materials in question were furnished. Crowe made a subcontract with Chert Stone Company for execution of a part of his contract with the railroad company, including the furnishing of materials.[2] In undertaking performance of its subcontract, Chert Stone Company purchased materials from Gardner & Meeks Company for which the latter sought a mechanic's lien.

The issue framed by the court was whether a mechanic's lien can be claimed in favor of a person supplying materials to a subcontractor, or is the right of lien limited by the section of the statute under review to the principal contractor and those who do work for him and furnish materials directly to him. In ruling upon this question, the Court of Errors & Appeals said:

---

[2] Although Chert Stone Company is described in the opinion as a subcontractor, it is explicitly noted that the contract included "the furnishing of materials."

The language of the section is broad. It declares that every building shall be liable for the payment of any debt contracted and owing to any person for labor performed or materials furnished for the erection and construction thereof, which debt shall be a lien on such building, & c. In *Van Pelt v. Hartough*, 2 *Vroom* 332 [31 *N.J.Law.* 332], Chief Justice Beasley declared: *'This provision is so comprehensive that if it had been left unconfined by subsequent restrictions a lien would have been given to all persons* who under any circumstances whatever performed any labor in the erection of a building, or *whose materials entered into its structure.'* In *Murphey-Hardy Lumber Co. v. Nicholas*, 37 *Id.* 414 (at *p.* 417) [66 *N.J.Law.* 414, 417], Justice Collins said: 'The normal effect of this legislation is to subject lands upon which a building is erected, by authority of the owner, to a lien in favor of anyone who furnishes labor or materials therefor. To limit this effect strict compliance with the proviso of the second section of the act is essential.' [Emphasis supplied.] [*Gardner & Meeks* at 258.]

The "subsequent restrictions" referred to by Chief Justice Beasley, and the "proviso of the second section" referred to by Justice Collins, refer to *N.J.S.A.* 2A:44–75 which limits the potential lien for labor and materials to the original contractor when the owner files his contract with the county clerk. Clearly, Hilton could have limited the potential lien to Harkins by filing their contract with the county clerk.

The format of the three sections of chapter 226 of the Laws of 1898 were summarized in *Beckhard v. Rudolph*, 68 *N.J.Eq.* 740 (E. & A. 1905), decided on the same day as *Gardner & Meeks* in an opinion also written by Justice Pitney:

The first section gives a lien upon the building itself in ordinary cases (there being no filed contract) for any debt contracted and owing to any person for labor performed or materials furnished for the erection and construction of the building. The second section denies the benefit of the lien upon the building to all others than the contractor, where the building is erected by contract and the contract is filed. The third section supplies an alternative remedy where the contract is in writing and is filed, this remedy being by lien upon the fund in the hands of the owner owing by him to the contractor.

*     *     *     *     *     *     *     *

Yet it is manifest that section 3 [*N.J.S.A.* 2A:44–77—2A:44–90] is intended to take care of persons who are debarred by section 2 [*N.J.S.A.* 2A:44–75] from their lien on the building. By this it is not meant that all persons thus barred are within the benefit of section 3. For instance, those who furnish materials or perform labor for a subcontractor would be entitled to a lien if not debarred by the filing of the principal contract as provided by section 2.... Yet such

parties are not entitled to employ the stop notice, because section 3 limits that remedy to those who have claims immediately against the principal contractor.

Section 3 was specifically amended by chapter 166 of the Laws of 1905 to include a subcontractor as one who could file a stop notice, and by chapter 241 of the Laws of 1917 to permit a subcontractor's materialman to file a stop notice. *See also Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc.,* 15 *N.J.* 418, 422 (1954), for a discussion of this evolution. There is no evidence that the scope of the stop notice provision was ever intended to exceed the lien section. *Chesebro-Whitman Co., Inc., supra* 86 *N.J.Super.* at 429. Notwithstanding the various legislative enactments to expand the coverage of stop notice protection to various claimants, the Legislature has not amended section one (*N.J.S.A.* 2A:44–66) to limit its extremely broad provisions as construed by the *Gardner & Meeks* court.

We do not consider the holding in *Gardner & Meeks* "dicta," as urged by defendant. We recognize that *Gardner & Meeks* does not specifically deal with a materialman supplying materials to another materialman, but rather with a materialman supplying materials to a subcontractor whose subcontract included the furnishing of materials. Notwithstanding this distinction, we believe the statute as construed by the Court of Errors & Appeals is sufficiently broad to include a materialman supplying materials to another materialman, if those materials are delivered to the construction site, received by the general contractor,[3] and incorporated into the building.

In his oral decision, the trial judge also described the question to be decided as one of first impression. Although the interpretation of the statute by the Court of Errors & Appeals in *Gardner & Meeks* was argued by plaintiff, the trial judge chose to ignore that decision and instead to rely upon the language of our Supreme Court in *Morris County Industrial Park v. Thomas Nicol Co., supra,* for guidance. That case specifically involved the claim of a materialman for material supplied to

---

[3]In this case Harkins the plumbing contractor.

another materialman. However, the general principles discussed in that case must be viewed in light of the statutes there under review, namely, the Municipal Mechanics' Lien Law, *N.J.S.A.* 2A:44–125 *et seq.*, and the Bond Act, *N.J.S.A.* 2A:44–143 *et seq.* Similarly, reliance by the trial judge on cases from outside our jurisdiction is misplaced since in all but one of those states, *i.e.*, Indiana, the statute being construed contained language which supports the limitation.[4] It is true that the Indiana statute is somewhat similar to ours, *i.e.:*

> Contractors, subcontractors, mechanics, lessors of equipment or tools, journeymen, laborers, and *all other persons* performing labor or furnishing materials or machinery may assert a lien upon the property subject to improvement. [Emphasis supplied.] [Indiana Code, 32–8–3–1 (supp.1979)]

The phrase, "all other persons," has been construed by the Indiana courts not to include those parties whose contribution to the effort is remote even though materialmen are within the protected class. The court ultimately held that a materialman of a materialman may not assert a lien under the Indiana statute. *See City of Evansville v. Verplank Concrete*, 400 *N.E.*2d 812, 820 (Ind.App.1980). The issue has been dealt with in an annotation entitled "Right of Subcontractor's Subcontractor or Materialman, or of Materialman's Materialman, to Mechanic's Lien." 24 *A.L.R.* 4th 963 (1983). In that annotation, the author recognizes that mechanics' liens are purely statutory. As the author says:

> The statutes normally designate or describe, at least generally, the persons on whom they confer the right to a lien, and a lien claimant must bring himself clearly within the terms of the statute, which is strictly construed in determining who are the beneficiaries of the statute. [*Id.* at 967.]

---

[4]Plaintiff has identified the foreign state provisions in force at the time of the decisions in out-of-state cases as the following: Cal.Civ.Code § 3110 (West); Ind.Code Ann. § 32–8–3–1 (Burns); Ky.Stat. § 2463 (4th ed.); La.Civ.Code Ann. art. 3249 (West); Mich.Comp.Laws Ann. § 570.1; Gen.Stat.Minn.1913 § 7020 (Tiffany); N.Y. Lien Law Ann. art. 2 § 5 (Consol.) Ohio Code Ann. § 8310 (Throckmorton); Or.Laws § 7416 (Lord); and Gen.Stat.Wash. § 1663 (Hill).

We conclude that the statute upon which Burris relies has been construed by our highest court, albeit in 1905, to include a materialman to a subcontractor, using language to describe the breadth of the statute sufficient to encompass a materialman to a materialman where the material is delivered to the job site, received by the general contractor, and incorporated into the building, as in this case.

We express no opinion as to the inclusion of more remote materialmen, such as manufacturers and assemblers of component parts, since Burris is not such a materialman. We believe the language of *N.J.S.A.* 2A:44–66 is sufficiently broad to include Burris, who supplied 14 completed toilet units, admittedly received at the job site by Harkins, and incorporated into the building, based upon the construction of the statute by the Court of Errors & Appeals in *Gardner & Meeks Co.* As noted, notwithstanding the many amendments to section 3 extending stop notice coverage, the Legislature has not amended section 1 to limit its broad language as construed in *Gardner & Meeks Co.* If our application of the statute, using the construction placed upon it by the *Gardner & Meeks* court, to a materialman who, on order of another materialman, delivers material to the job site which are received by general plumbing contractor and incorporated into the building, is beyond the intent of the Legislature, then *N.J.S.A.* 2A:44–66 should be amended to limit its broad coverage.

In view of his decision that Burris was not included within the persons entitled to a mechanic's lien under the statute, the trial judge did not address the additional issue advanced by defendants as to the right to a lien where the owner is incorrectly identified in the mechanic's notice of intention and in the lien claim. We therefore remand this issue for determination by the trial judge.

Reversed and remanded for further proceedings consistent with this opinion.